COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

Brian P. WILLIAMS, Respondent.

No. 91–277.

Supreme Court of Iowa.

July 17, 1991.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Lee H. Gaudineer of Austin, Gaudineer, Austin, Salmons & Swanson, and Verne Lawyer, Des Moines, for respondent.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

This attorney disciplinary proceeding involves ethical misconduct in a criminal matter. Respondent, Brian P. Williams, is licensed to practice law in this state. From 1962 to 1986 he had a private practice which was originally located in Des Moines and later moved to West Des Moines. In 1986, he retired from the active practice of law. At the hearing, he stated that he viewed himself as being "semi-retired" and currently an investor. Other than the incident which was the subject of the grievance hearing, Brian P. Williams has never been charged with any crime or grievance.

On August 20, 1990, the Committee on Professional Ethics and Conduct of the Iowa State Bar Association (committee) filed a complaint against Williams alleging ethical misconduct in a criminal matter. The Grievance Commission (commission) conducted a hearing upon the complaint on January 15 and 16, 1991. The commission then filed its findings of fact, conclusions of law, and recommendation, finding Williams had violated a provision of the Iowa Code of Professional Responsibility for Lawyers and recommended that he receive a public reprimand.

On September 4, 1989, Brian Williams was arrested in Calhoun County, Iowa, and charged with operating a motor vehicle while intoxicated (OWI). The committee alleges that while Williams was being transported by a Calhoun County deputy sheriff (Scott Anderson) to the Sac County jail, he offered the deputy $2000 (ultimately offering $5000) to forget about the incident. The complaint further alleges that during the drive to the jail, Williams informed the deputy that he could buy off the judge and the county attorney but this would not be necessary if the deputy would accept the offered money. By his conduct, the committee charges that Williams violated seven provisions of the Iowa Code of Professional Responsibility for Lawyers. They are: EC 1-5 (A lawyer should maintain high standards of professional conduct and should encourage fellow lawyers to do likewise. A lawyer should be temperate and dignified, and should refrain from all illegal and morally reprehensible conduct. Because of a lawyer's position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude.); DR 1-102(A)(1) (a lawyer shall not violate a disciplinary rule), (3) (a lawyer shall not engage in illegal conduct involving moral turpitude), (4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), (5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and (6) (a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law); and DR 9-101(C) (a lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official).

The commission found that the committee had not shown by a convincing preponderance of the evidence that Williams had violated EC 1-5; DR 1-102(A)(3), (4), or (6); or DR 9-101(C). Although an offer of

money was admittedly made by Williams to Deputy Anderson, the commission chose to believe Williams' version of why the $5000 was offered instead of Anderson's. The reason given was that the alleged threat to buy off the judge and county attorney and the offer to pay $5000 to forget the charge were based solely on Deputy Anderson's testimony, which was challenged by Williams. Williams denied ever claiming he could buy any public official and denied that the money offered was to have the OWI arrest forgotten or the paperwork lost. Further, the commission felt that Anderson acknowledged misstatements and exaggerations in his testimony about related events that made his credibility suspect.

The commission also thought the evidence of bribery was insufficient because, at the time Williams was transported to the Sac County jail, Deputy Anderson was not the only law enforcement official to know of the arrest. The two chief law enforcement officers in the county also knew Williams had been arrested for OWI. Williams had talked to both of them. He had even authorized one of them to drive his Mercedes into town. Both officers were also present and observed the processing procedure at the Calhoun County jail. From this, the commission determined that Williams knew during the trip to Rockwell City that Deputy Anderson was not in a position to drop the charge. The evidence also established that while Williams may have been intoxicated, he was not incoherent. Thus, the commission found that Williams' conduct did not involve moral turpitude, dishonesty, fraud, deceit, or misrepresentation.

The commission did, however, find that the committee had established by the necessary quantum of evidence that Williams violated DR 1–102(A)(5). The commission based its finding in this respect on Deputy Anderson's testimony as well as the admission of Williams that he offered the deputy money (in increasing amounts) to let him out of the vehicle in an attempt to avoid being placed in a cell until his family could post bond and pick him up. This was held to be prejudicial to the administration of justice and a violation of DR 1–102(A)(5). The commission found that DR 1–102(A)(1) was cumulative and declined to make a finding as to this rule.

Based on the evidence presented to it, the commission recommended that Williams receive a public reprimand for his violation of DR 1–102(A)(5). The commission deemed a public reprimand an appropriate sanction under this particular record for several reasons. First, the commission was cognizant of the fact that this complaint is the first blot on an otherwise untarnished record of over twenty-five years in the legal profession. In addition, the commission found that while the complaint clearly calls into question certain personal aspects of Williams' life, no client or client's interest has suffered because of the lawyer's inappropriate action. Finally, the commission points out that Williams was intoxicated during the period of time of the alleged ethical misconduct, and while intoxication cannot excuse the violation of a disciplinary rule, it is something that should be considered in determining an appropriate sanction.

■ Since no appeal was taken from the report filed by the grievance commission in this case, we are called upon to review the matter de novo and make a determination without oral argument or further notice to the parties. Iowa Sup.Ct.R. 118.10. Upon such review, we may impose a lesser or greater sanction than that recommended by the commission. *Id.*

■ Our scope of review of the commission's findings, conclusions, and recommendations in lawyer disciplinary matters is de novo. Iowa Sup.Ct.R. 118.11; *Committee on Professional Ethics & Conduct v. Nadler*, 467 N.W.2d 250, 251 (Iowa 1991). We give respectful consideration to the commission's findings, conclusions, and recommendations but are not bound by them. *Committee on Professional Ethics & Conduct v. Clauss*, 468 N.W.2d 213, 214 (Iowa 1991). The burden is on the committee to prove by a convincing preponderance of the evidence that the respondent has violated the Iowa Code of Professional Responsibility for Lawyers as charged. *Com-*

*mittee on Professional Ethics & Conduct v. Seff,* 457 N.W.2d 924, 925 (Iowa 1990). A convincing preponderance of the evidence is a greater quantum of evidence than that required in a civil trial but less than that required to sustain a criminal conviction. *Committee on Professional Ethics & Conduct v. Hurd,* 375 N.W.2d 239, 246 (Iowa 1985). The committee need not prove respondent was acting as a lawyer at the time of the alleged misconduct; lawyers do not shed their professional responsibilities in their personal lives. *Committee on Professional Ethics & Conduct v. Shuminsky,* 359 N.W.2d 442, 445 (Iowa 1984). It is immaterial that the respondent was not charged or convicted of a crime since a criminal conviction is not a condition precedent to a discipline proceeding when the facts themselves warrant discipline. *Committee on Professional Ethics & Conduct v. Hall,* 463 N.W.2d 30, 35 (Iowa 1990). Similarly, a criminal law defense is not a defense in a disciplinary proceeding since the purpose of a disciplinary hearing is not primarily intended to punish the lawyer but rather to protect the public. *Committee on Professional Ethics & Conduct v. Silver,* 395 N.W.2d 877, 879 (Iowa 1986). An alcohol problem and intoxication are not excuses for misconduct but may be considered along with other factors in determining fitness to practice law. *Committee on Professional Ethics & Conduct v. Jackson,* 429 N.W.2d 122, 123 (Iowa 1988).

Great effort, understandably has been made in this case to prove or deny that a bribery attempt was made. The seriousness of this issue is obvious. But we do not think the appropriate sanction depends on this outcome. The significance of Williams' conduct appears from what we can see; it need not be measured by choosing an interpretation of what he was trying to accomplish.

Williams admitted to driving while intoxicated at speeds of eighty to ninety miles per hour. The intoxilyzer test showed a blood alcohol content of .164. He was emotionally upset at the time over a domestic dispute. His offer of money to the deputy to let him go before arriving at the jail, he says, was the result of his bad emotional state and his extreme claustrophobia. He supported the latter with evidence that he took psychiatric treatment unsuccessfully for this condition for several years. This medical problem was compassionately considered by the trial judge when Williams pled guilty to OWI. The court allowed Williams to serve fifty hours of time in community service in lieu of being incarcerated.

Williams admitted to being uncooperative, belligerent, demanding and obnoxious. He told the female jailer to go to hell and banged the food shoot door of his cell. This too he attributed to claustrophobia.

The conversation with Deputy Anderson if not intended to embrace the subject of bribery was nevertheless heavy with overtones. From commenting that $5.25 per hour deputy pay was not nearly enough, Williams escalated the conversation about money by offering $1000 to $5000 to be turned loose. This would hardly seem coincidental. At least to Deputy Anderson, the thought of bribery would be supported by Williams' apparent means to pay, coming as it did from the driver of an expensive car.

Deputy Anderson was offended, conveyed his suspicions to the sheriff and sought to obtain additional evidence by further communications with Williams. Anderson left a note on Williams' car to contact him which Williams did. No new evidence of bribery emerged from a recorded telephone conversation from Williams to Deputy Anderson. The explanation for this call by Williams was that he thought the deputy was just being friendly and he wanted his help to get a reduced charge or lighter sentence. We note that Williams discussed the overture contained in Anderson's note with his lawyer, Larry Marcucci, and made the call against his lawyer's advice. As Williams himself testified, his conduct from start to finish was wrong and was marked by bad judgment.

It is suggested that Williams was targeted by an overzealous deputy who set up an entrapment plan and that some more favorable consideration should thereby enure to

Williams' benefit. We find no merit in this notion as pertains to Williams and have serious doubt that an entrapment defense can ever excuse a lawyer's conduct in disciplinary matters. See *In re Porcelli*, 77 Ill.2d 473, 34 Ill.Dec. 158, 397 N.E.2d 830 (1979).

Our prior cases, though different in type, are instructive. Recently, we again held that a criminal conviction is not a prerequisite to our sanctioning a lawyer for a breach of our disciplinary rules. *Committee on Professional Ethics & Conduct v. Hall*, 463 N.W.2d 30 (Iowa 1990). We have suspended indefinitely an attorney's license for alcoholism. *Committee on Professional Ethics & Conduct v. Sloan*, 262 N.W.2d 262 (Iowa 1978); *see also Committee on Professional Ethics & Conduct v. Jackson*, 429 N.W.2d 122 (Iowa 1988) (three-month suspension); *Committee on Professional Ethics & Conduct v. Rabe*, 284 N.W.2d 234 (Iowa 1979) (six-month suspension). We also dismissed the argument that the mental disability of insanity or diminished responsibility could be a defense in lawyer discipline cases. *Committee on Professional Ethics & Conduct v. Silver*, 395 N.W.2d at 877 (Iowa 1986). In *Committee on Professional Ethics & Conduct v. Halleck*, 325 N.W.2d 117 (Iowa 1982), we suspended a lawyer's license indefinitely for improperly seeking to influence a witness's testimony. We agreed that the record supported an assessment that his misconduct was due to poor judgment rather than moral turpitude. We said:

> Nevertheless, respondent engaged in unprofessional conduct and must be disciplined. In determining what that discipline should be, the question is not simply what punishment the offense deserves but also what penalty is required as a deterrent to others and as an indication to the public that the courts will maintain the ethics of the profession.

*Id.* at 118 (citations omitted).

Our review leads us to conclude that respondent Williams not only violated DR 1–102(A)(5), as was found by the commission, but he also violated EC 1–5, DR 1–102(A)(1), and DR 1–102(A)(6), as charged by the committee. The word "moral" connotes right practice. It is characterized by excellence in what pertains to practice or conduct, springing from a person's natural sense or reasoned judgment of what is right and proper. It means conforming to a standard of what is good and right. Webster's Third New Int'l Dictionary 1468 (1976). "Reprehensible" means culpable, censurable, or blamable. *Id.* at 1926. Williams' conduct in regard to officers of the court which impeded the carrying out of their responsibilities violated this standard. Even with his disability of claustrophobia, he had no right to elevate his desires above the duties of those administering the judicial system, and his duty as a lawyer to cooperate with them. We also find based on our review of the record that these violations were proven by a convincing preponderance of the evidence warranting a greater sanction than that recommended by the commission. Therefore, we order Brian Williams' license to practice law in this state suspended indefinitely with no possibility of reinstatement for six months. Upon any application for reinstatement, Williams shall bear the burden of proving that he has not practiced law during the period of suspension and that he has in all respects complied with the requirements of Iowa Supreme Court Rules 118.12 and .13.

It is further ordered that the costs of this action be assessed against Williams in accordance with Iowa Supreme Court Rule 118.22.

LICENSE SUSPENDED.