Thomas Earl SEEHAN, Sr., Appellee,

v.

STATE OF IOWA, Appellant.

No. 93–3194.

United States Court of Appeals,
Eighth Circuit.

Submitted May 11, 1994.

Decided Oct. 4, 1994.

Order Granting Rehearing En Banc;
Judgment and Opinion Vacated
Dec. 22, 1994.

Thomas D. McGrane, Des Moines, IA, argued, for appellant.

Mark A. Roeder, Manchester, IA, argued, for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

We are called upon to determine whether Thomas Earl Seehan's trial in Iowa state court violated standards established by the Constitution. The district court determined that Seehan's constitutional rights were abridged and granted him a writ of habeas

corpus. Our review of that holding prompts us to affirm in part and reverse in part.

## I. BACKGROUND

This is a tragic case. The evidence established that Seehan, a loving father by all accounts, killed his two-year-old son Tommy, to avoid losing custody of the child as part of a marital breakup. Seehan then made several attempts at suicide which failed. For this act against his son, he was found "guilty of murder in the first degree." He was sentenced to a term of imprisonment for life without the possibility of parole.

Seehan attacked this final judgment by direct appeal and later, through state post-conviction proceedings. The Iowa Supreme Court in both instances affirmed the conviction.

Seehan's present appeal reaches us on two separate, but intertwined, issues. First, he contends that his trial counsel was ineffective, under the standards established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because his counsel failed to request the use of a jury verdict form that specifically permitted a finding of "not guilty by reason of insanity." Seehan claims that Iowa Code section 785.19 (1975) requires such a form. There is no allegation that the jury was improperly instructed on the law or that it was not instructed to find Seehan not guilty if he was found to be insane, only that the verdict form did not provide a place for the jury to respond with more than "not guilty." This claim was raised for the first time in the federal habeas action and was decided favorably to Seehan by the district court.

Second, Seehan contends that his counsel was ineffective under *Strickland* because he failed to object to prejudicial comments made by the prosecutors in their opening statement and closing argument. This claim was advanced and decided in the state post-conviction proceedings and in the petition for federal habeas relief. It was a basis for the granting of the writ by the district court.

## II. DISCUSSION

■ We disagree with the district court's ruling on Seehan's verdict form claim, a claim, as indicated earlier, not raised in the state court. The district court reached the merits of this claim, in spite of Seehan's procedural default in state court, by finding cause for the default and prejudice from the action. *Wainwright v. Skyes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). The district court seized upon a perceived gap in an otherwise inclusive holding in *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), ruling that Seehan established cause for his procedural default by reason of ineffective acts of his post-conviction counsel. This circuit has held to the contrary. *Nolan v. Armontrout*, 973 F.2d 615, 617 (8th Cir.1992). Accordingly, we reverse this holding of the district court.

■ We agree, on the other hand, with the ruling of the district court on the issue of prosecutorial misconduct in the opening statement and the closing argument. On federal habeas review, "[n]either this court nor the district court may undertake to correct alleged trial errors...." *Hulsey v. Sargent*, 821 F.2d 469, 472 (8th Cir.1987). Our task is to review the trial process to determine whether an error of constitutional dimension occurred. *Id.* Usually, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). Here, however, Seehan does not assert a due process violation. He advances, instead, as earlier indicated, a Sixth Amendment right to effective assistance of counsel. Thus, we must review these allegations under the rules announced in *Strickland* and subsequent cases.

■ In *Strickland*, the Supreme Court established a two-part approach. When a convicted defendant complains of ineffective assistance of counsel, he must establish that the identified acts or omissions "were outside

the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. This is an objective test. Then, even if the acts or omissions are outside this range, the defendant must establish that the deficiencies were "prejudicial to the defense." *Id.* at 692, 104 S.Ct. at 2067. With this in mind, we review the alleged misconduct.

■ The lead member of the prosecutorial team was a visibly expectant mother. In her opening statement, while "continuously patt[ing] her pregnant belly," Appellee's brief at 25, she stated:

> He was the kind of little boy that I would like to have. He was the kind of little boy that you would like to have. His personality was just developing. He was just starting to come into his own. He weighed 35 pounds. He was helpless. He was defenseless. He was snuffed out. Snuffed out before he had a chance.

Transcript at 7. Then, in summation, the other member of the prosecutorial staff argued, in part, as follows:

> Our duty as prosecutors in this case has been to present the evidence as we developed it to you. We have a different type of duty than you would anticipate. It's different from that of a civil case in which lawyers represent one client or another. We represent the people of Iowa and Story County. In short, we represent you. *We also represent the defendant because he is a part of our society.*
>
> . . . .
>
> Who are the parties in this case? Tommy Seehan. Tommy Seehan was a normal, healthy, two year old child on the morning of November 13th, 1975. By 9 p.m. that same day, Tommy Seehan was dead.
>
> . . . .
>
> They say that a chain is only as strong as its weakest link. In law enforcement there is a chain. There are those police, the policemen, the law enforcement officers who investigate cases. The witnesses who come forward and testify as to what they saw or observed. Prosecution, who presents the case. We have presented everything, I think good and bad. Anything. I think the evidence is before you. You should properly consider.
>
> But the last and most important thing is the jury. *You jurors are part of that law enforcement chain. Everybody else has done their part, and now you must do yours and make a decision. They are not paying any salary, they are not giving me enough money to try and convict an innocent person.*

Transcript at 503, 504 and 539 (emphasis added).

■ These statements, perhaps somewhat innocuous in isolation, were, we think, when viewed in the context of all the evidence and the emotional nature of the trial, improper. Thus, we are inclined to think that under our cases, failure of defense counsel to object to these patently inflammatory statements fell outside the range of competent lawyering. Accordingly, we must assess their prejudicial effect. We review these omissions under the so-called *Fretwell* test. *Lockhart v. Fretwell,* —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). We do not set aside a conviction or sentence solely because the outcome would have been different but for counsel's error. *Id.* at ——, 113 S.Ct. at 843. Rather, the focus is on whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* at ——, 113 S.Ct. at 844. We think this test is at least as rigorous as that outlined in *Darden,* 477 U.S. at 181, 106 S.Ct. at 2471–72, with respect to a due process challenge. Under either standard, we agree with the result reached by the district court.

We are not inclined to compare the evidence at this trial with that of numerous other cases in this circuit dealing with prosecutorial misconduct. However, our review of the record establishes that this was a very close case on the issue of defendant's state of mind, indeed Seehan's sanity. The expert testimony offered by each side was compelling. The tragic facts of this marital breakup and the account of the death of the child were presented in emotion-charged detail. While not by itself determinative, ten hours of deliberation by the jury indicates that the state's case, at least on the question of the defendant's sanity, was not overwhelming. The obvious appeal by the prosecutors to the prejudices, passions, emotions and instincts

of the members of the jury as parents and good citizens was simply too much. In light of the inflammatory statements, we think the jury was unable to calmly consider the mitigating factors relating to Seehan's intent and mental state which could have resulted in a second-degree murder conviction, or an acquittal by reason of insanity. Thus, we conclude that the trial, under the circumstances, was "fundamentally unfair" and "unreliable." In short, the *Fretwell* test has been met.

## III. CONCLUSION

Accordingly, we reverse the district court on the verdict claim and affirm the district court on the prosecutorial conduct issue. The case is remanded to the district court with directions to grant a writ of habeas corpus subject to retrial by the State of Iowa within a reasonable time.

BOWMAN, Circuit Judge, concurring in part and dissenting in part.

I concur in the Court's reversal of the holding of the District Court on Seehan's verdict-form claim. I fully agree that that claim affords Seehan no basis for habeas relief.

As to the Court's affirmance of the District Court's grant of habeas relief on Seehan's prosecutorial-misconduct claim, I respectfully dissent. Having reviewed the trial transcript, I am unable to agree that Seehan's trial counsel was constitutionally ineffective in not objecting to the prosecutorial comments about which Seehan complains. I am satisfied that counsel's performance in this regard was neither professionally incompetent nor prejudicial to Seehan's case. Accordingly, Seehan's claim does not satisfy either aspect of the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

I start with the question of whether Seehan has shown that any prejudice resulted from counsel's omission. At trial, it was undisputed that Seehan had caused his two-year-old son's death by smothering him with a pillow. Uncontradicted testimony established that to kill a child in this fashion would take anywhere from four to fifteen minutes. The state presented a strong case, apparently found convincing by the jury, that Seehan

killed his son to spite the child's mother, who, having been physically abused by Seehan, was seeking a divorce from him and who had informed him she wanted custody of the boy.

But whatever the jury ultimately may have thought regarding Seehan's motive, the fighting issue at trial was whether Seehan was sane when he took his son's life. The trial spanned some eight days, starting on April 28, 1976, with counsel's opening statements and concluding with the submission of the case to the jury on May 5, 1976. The trial record runs 540 pages, not including the reading of the instructions to the jury. A large portion of the trial was given over to the battle of the experts. Unlike the majority of this panel, I do not find the testimony of Seehan's two expert witnesses particularly compelling, and I do not believe that the statements of the prosecutors upon which the majority relies for its result had any significant effect upon the jury's verdict. The Iowa Court of Appeals, in affirming the denial of Seehan's application for postconviction relief, *Seehan v. State*, 473 N.W.2d 208 (Iowa 1991) (table), concluded that the state's evidence of Seehan's guilt of first-degree murder was "overwhelming." *Seehan v. Iowa*, No. 90–506, slip op. at 3 (Iowa May 16, 1991). My review of the record leaves me firmly convinced that this conclusion is correct. In short, Seehan has failed to establish the "prejudice" component of his ineffective assistance claim, *i.e.*, he has failed to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, *quoted in Lockhart v. Fretwell*, —— U.S. ——, ——, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993).

In addition, I cannot agree with the Court that Seehan's trial counsel, who in my judgment rendered competent, and indeed admirable, service to Seehan throughout the trial, was constitutionally deficient in not objecting to the prosecutorial statements here in question. The Court's opinion, although purporting not to do so, yanks these statements out of context and thus gives them a prominence and a significance they almost certainly did not actually have in the trial courtroom.

The Court, *ante* at 4, quotes from Story County Attorney Ruth Harkin's opening statement to the jury, but fails to note that

shortly before making the quoted remarks Harkin had cautioned the jury as follows:

> In this case we have seventeen, or about seventeen witnesses that we intend to call. All of the witnesses will come in, and they will be coming in one by one; and they will not be present in the courtroom during the trial. And they will come up to this witness box, and they will present all of their evidence through this chair. All of the evidence that you will hear in this case will come from this place in the courtroom. It's important to keep in mind that anything that I might say, anything that Mr. Parker [the assistant county attorney] might say, or anything that Mr. Brewer [the lead defense counsel] might say is not to be considered as any type of evidence in this case. All of the evidence that you are to consider comes strictly from the witnesses. We are merely advocates for our positions, and we are merely seeing that the evidence will be presented to you.

Trial Tr. at 5. The remarks by Harkin the Court finds offensive then begin on the very next page of the trial record. Harkin, who was pregnant, is said to have patted her belly while making these remarks. To me, given Harkin's earlier statement, and considering the desire of any competent counsel to avoid offending or alienating the jury, it is entirely understandable why Seehan's counsel would refrain from objecting to Harkin's brief comments about the dead child. In addition, it seems quite obvious to me that no lawyer in his right mind would have interrupted Harkin's statement to the jury with a request that she be admonished to refrain from patting her belly.

The Court, *ante* at 4, also quotes from the prosecution's closing argument by Assistant County Attorney Richard Parker. But again, the Court's opinion neglects to put the questioned remarks into proper context. In particular, the Court fails to point out that immediately following the quotation's final paragraph containing language the Court underscores for emphasis, Parker had this to say to the jury:

> My feelings aren't important. It's what you heard. I think that this evidence demands a guilty verdict. I think that it shows an intentional killing that we have shown malice, that we have shown premed-

itation, the time to think about it, deliberate about it, before or for four to fifteen minutes to retract. That's a substantial amount of time to deliberate. If you are doing that sort of thing.

> In short, I think the evidence is all there. I leave it in your hands.

Trial Tr. at 539–40. The Court also fails to point out that earlier in his closing argument Parker had unequivocally informed the jury that it was not to take his feelings into account:

> I cannot tell you what I feel because it was not the evidence. My comments to you this morning should not be considered as evidence. You were here, you heard every scrap of evidence from that chair that you can consider. The comments that Mrs. Harkin made to you, the comments that I make to you, the comments that Mr. Brewer made to you and will make to you should not be considered as evidence. The statements that I make, and this is my only opportunity to really talk with you, are going to be my interpretations of the facts. I will not intentionally mislead you as to any of the evidence that I discuss in this case. If you feel that I have misstated any of the evidence, disregard what I say. It will never be my intention to mislead you. But remember what is important is what you heard, the facts that you heard, not what I say and not what Mr. Brewer says.

> The purpose of our argument here is merely to assist you in developing the theory of each of our respective sides. We are advocates. We represent a side, a different theory about the facts in this case.

Trial Tr. at 503–04. In addition, the Court fails to tell the reader that it has not set forth all the comments made by Parker in the first paragraph of the portion of his closing argument the Court quotes, *ante* at 4. This paragraph of Parker's closing argument, without omissions, appears this way in the trial record:

> Our duty as prosecutors in this case has been to present the evidence as we developed it to you. We have a different type of duty than you would anticipate. It's different from that of a civil case in which lawyers represent one client or another.

We represent the people of Iowa and Story County. In short, we represent you. We also represent the defendant because he is part of our society. Out [sic] duty is to ensure that he gets a fair trial. Our duty is to ensure that we have a just result. Trial Tr. at 503. In my view, the last two sentences of the quoted paragraph, which the Court's opinion omits, explain Parker's statement about also representing the defendant and make it clear that he is doing no more than advising the jury of every prosecutor's duty to proceed fairly and to seek a just result.

As with Harkin's remarks in her opening statement, it is easy to see that a competent counsel could readily have chosen to refrain from objecting to any of Parker's comments. Taken in context, Parker's comments, like Harkin's comments in her opening statement, were not clearly inappropriate, and to say, as the Court does, that any of these comments were "patently inflammatory," *ante* at 5, requires a great stretch of the imagination. It also requires a great stretch of the imagination to conclude, as the Court does, that defense counsel's failure to object to these statements "fell outside the range of competent lawyering." *Id.* In fact, the record shows that defense counsel recognized the emotional appeal of the state's argument and chose to counter it with a forceful and emotional closing argument of his own. This was an entirely reasonable strategic choice and cannot properly be viewed as deficient lawyering.

Under *Strickland,* Seehan must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687, 104 S.Ct. at 2064. This means that Seehan must overcome the "strong presumption" that in the circumstances of his case "the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). It seems clear to me that Seehan has fallen far short of making the necessary showing.

For the reasons stated, I conclude that Seehan has failed to establish either component of the *Strickland* standard, much less both of them. Thus his ineffective assistance claim must fail. Accordingly, I would reverse the District Court's grant of habeas relief to Seehan and remand the case for entry of judgment denying the writ.

## ORDER

Dec. 22, 1994.

The suggestion for rehearing en banc is granted. The judgment and opinion filed by the panel on October 4, 1994, are vacated. Having disqualified themselves from consideration or decision of this case, Judge Fagg and Judge Hansen did not vote on the suggestion for rehearing en banc.

This case is set for oral argument at 10:00 a.m. on Thursday, January 12, 1995, in the U.S. Court & Custom House in St. Louis, Missouri.