Thomas Earl SEEHAN, Sr., Appellee,

v.

STATE OF IOWA, Appellant.

No. 93-3194.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1995.

Decided Dec. 14, 1995.

Thomas McGrane, Asst. Atty. Gen. (argued), Des Moines, IA, for appellant.

Mark A. Roeder (argued), Manchester, IA, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY, McMILLIAN, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges, en banc.

BOWMAN, Circuit Judge.

The State of Iowa appeals from the order of the District Court granting the 28 U.S.C. § 2254 petition of Thomas Earl Seehan, Sr., for a writ of habeas corpus. We reverse.

## I.

In 1976, Seehan was tried by jury in an Iowa state court for the murder of his two-year-old son Tommy Seehan. He was convicted of first-degree murder and was sentenced, as required by Iowa law, to life imprisonment without possibility of parole. On direct appeal, the Iowa Supreme Court affirmed Seehan's conviction. *State v. Seehan*, 258 N.W.2d 374 (Iowa 1977). Some ten years later, in June 1987, Seehan sought post-conviction relief in the state trial court. Post-conviction relief was denied, and the Iowa Supreme Court again affirmed the judgment of the trial court. *Seehan v. State*, 473 N.W.2d 208 (Iowa 1991). Shortly thereafter, Seehan filed the present federal habeas action.

After a hearing in which oral arguments were heard and limited testimony was taken, the District Court granted Seehan's petition for a writ of habeas corpus, ordering the state either to retry Seehan or to release him from custody. The court found that habeas relief was warranted on two claims of ineffective assistance of trial counsel: (1) failing to object to inappropriate remarks made by the prosecutors during their opening statement and their closing argument; and (2) failing to request the use of a jury verdict form that expressly provided for a finding of "not guilty by reason of insanity." The state appeals.

The state's appeal was heard initially by a three-judge panel of this Court, which unanimously reversed the holding of the District Court on Seehan's verdict-form claim, but affirmed in a two-to-one decision that court's grant of habeas relief on the prosecutorial-misconduct claim. *Seehan v. Iowa*, 37 F.3d 389 (8th Cir.1994). We granted the state's suggestion for rehearing en banc, thereby vacating the panel opinion. We now reverse the judgment of the District Court.

## II.

The District Court held that Seehan's trial counsel was ineffective because he failed to request the use of a jury verdict form that specifically permitted a finding of "not guilty by reason of insanity." For the reasons set forth in the panel·opinion, we reverse this holding of the District Court, and we reinstate the portion of the panel opinion that deals with this issue. *Seehan*, 37 F.3d at 390. This claim thus affords Seehan no basis for habeas relief.

## III.

The District Court also granted habeas relief on Seehan's prosecutorial-misconduct claim, *i.e.*, his claim that his trial counsel was ineffective because he did not object to allegedly improper comments made by the prosecutors in their opening statement and closing argument. Like the District Court, we consider this claim under the standards established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). These standards require the convicted defendant who complains of ineffective assistance of counsel to show that the identified acts or omissions (1) "were outside the wide range of professionally competent assistance," *id.* at 690, 104 S.Ct. at 2066, and (2) were "prejudicial to the defense," *id.* at 692, 104 S.Ct. at 2067. The "prejudice" component of *Strickland* requires the convicted defendant to establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064, *quoted in Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993).

Seeking reversal of the District Court's decision, the state argues that Seehan has failed to satisfy either the deficient-performance or the prejudice component of *Strick-*

*land.* We agree. His ineffective-assistance-of-counsel claim is grounded on arguments that the prosecution made to the jury without objection. First, Story County Attorney Ruth Harkin, who was a visibly expectant mother at the time of Seehan's trial, included in her opening statement these comments about the slain child:

> He was the kind of little boy that I would like to have. He was the kind of little boy that you would like to have. His personality was just developing. He was just starting to come into his own. He weighed 35 pounds. He was helpless. He was defenseless. He was snuffed out. Snuffed out before he had a chance.

Trial Tr. at 7. Later, summing up the state's case, Assistant County Attorney Richard Parker argued, in part, as follows:

> Our duty as prosecutors in this case has been to present the evidence as we developed it to you. We have a different type of duty than you would anticipate. It's different from that of a civil case in which lawyers represent one client or another. We represent the people of Iowa and Story County. In short, we represent you. We also represent the defendant because he is part of our society.

*Id.* at 503.

> Who are the parties in this case? Tommy Seehan. Tommy Seehan was a normal, healthy, two year old child on the morning of November 13th, 1975. By 9 p.m. that same day, Tommy Seehan was dead.

*Id.* at 504.

> They say that a chain is only as strong as its weakest link. In law enforcement there is a chain. There are those police, the policemen, the law enforcement officers who investigate cases. The witnesses who come forward and testify as to what they saw or observed. Prosecution, who presents the case. We have presented everything, I think good and bad. Anything. I think the evidence is before you. You should properly consider.

> But the last and most important thing is the jury. You jurors are part of that law enforcement chain. Everybody else has done their part, and now you must do yours and make a decision. They are not paying any salary, they are not giving me enough money to try and convict an innocent person.

*Id.* at 539. Seehan's trial counsel neither objected to any of the prosecutors' comments nor moved for a mistrial based on alleged prosecutorial misconduct.

In his application for post-conviction relief in the state district court for Story County, Seehan claimed ineffective assistance of trial counsel in that counsel failed to seek a mistrial for the alleged prosecutorial misconduct represented by the arguments we have quoted above. Viewing those arguments in context, the court found no prosecutorial misconduct by either Harkin or Parker. The court also found that, even if those arguments were considered impermissible, neither the arguments nor counsel's failure to move for a mistrial resulted in prejudice to Seehan. "No reasonable probability exists," said the court, "that, but for counsel's failure to move for a mistrial based on prosecutorial misconduct, the result of Mr. Seehan's trial would have been different." Findings of Fact, Conclusions of Law and Order Denying Post–Conviction Relief at 16–17 (Mar. 29, 1990).

The Iowa Supreme Court agreed, applying *Strickland* and holding that Seehan had not "met his burden to show that counsel failed to perform an essential duty or that any prejudice resulted from counsel's omission." *Seehan v. State,* No. 116/90–506, slip op. at 2–3. In particular, the court found that the prosecutors' comments had not "so infected the trial as to change the result. The evidence of Seehan's guilt was overwhelming." *Id.* at 3.

▮ Having considered *de novo* the application of *Strickland* to this case, we agree with the conclusions reached by the Iowa state courts.[1] As to the defective-performance component of *Strickland,* we are satisfied that Seehan's trial counsel was not con-

---

1. For the reasons expressed in Judge Beam's dissent, we reject the state's contentions that our

*Strickland* review is anything less than *de novo.*

stitutionally deficient in failing to object to the prosecutorial statements here in question. Though Seehan would have us view these statements as clearly improper, the state courts, applying state law and considering the statements in context, did not so characterize them, and instead found that no prosecutorial misconduct had occurred. Moreover, even if we were to regard the statements as something more than colorful, forceful advocacy, we still could not avoid the conclusion that Seehan's arguments, which the District Court accepted, take the statements out of context and thus give them a prominence and a significance they almost certainly did not have in the trial courtroom.

We already have quoted, *ante* at 608–09, the challenged passage from Harkin's opening statement to the jury. Seehan would have us ignore that shortly before making the quoted remarks Harkin had cautioned the jury as follows:

In this case we have seventeen, or about seventeen witnesses that we intend to call. All of the witnesses will come in, and they will be coming in one by one; and they will not be present in the courtroom during the trial. And they will come up to this witness box, and they will present all of their evidence through this chair. All of the evidence that you will hear in this case will come from this place in the courtroom. It's important to keep in mind that anything that I might say, anything that Mr. Parker [the assistant county attorney] might say, or anything that Mr. Brewer [the lead defense counsel] might say is not to be considered as any type of evidence in this case. All of the evidence that you are to consider comes strictly from the witnesses. We are merely advocates for our positions, and we are merely seeing that the evidence will be presented to you.

Trial Tr. at 5. The remarks by Harkin that Seehan complains about then begin on the very next page of the trial record. Given Harkin's earlier statement, and considering the desire of any competent counsel to avoid

offending or alienating the jury, it is entirely understandable why Seehan's counsel would refrain from objecting·to Harkin's brief comments about the dead child.[2]

Seehan also bases his ineffective assistance claim on Parker's closing argument. But again, both Seehan and the District Court neglect to put the questioned remarks into proper context. We note that immediately following the final paragraph of the portions of Parker's argument that we have quoted above, *ante* at 609, Parker had this to say to the jury:

My feelings aren't important. It's what you heard. I think that this evidence demands a guilty verdict. I think that it shows an intentional killing that we have shown malice, that we have shown premeditation, the time to think about it, deliberate about it, before or for four to fifteen minutes to retract. That's a substantial amount of time to deliberate. If you are doing that sort of thing.

In short, I think the evidence is all there. I leave it in your hands.

Trial Tr. at 539–40. We further note that earlier in his closing argument Parker had unequivocally informed the jurors that they were not to take his feelings into account:

I cannot tell you what I feel because it was not the evidence. My comments to you this morning should not be considered as evidence. You were here, you heard every scrap of evidence from that chair that you can consider. The comments that Mrs. Harkin made to you, the comments that I make to you, the comments that Mr. Brewer made to you and will make to you should not be considered as evidence. The statements that I make, and this is my only opportunity to really talk with you, are going to be my interpretations of the facts. I will not intentionally mislead you as to any of the evidence that I discuss in this case. If you feel that I have misstated any of the evidence, disregard what I say. It will never be my intention to mislead

---

2. Seehan asserts that Harkin, great with child, patted her belly as she made her comments about little Tommy. We find no support for this assertion in the record. Even if the assertion is true, however, it would not change our view that

defense counsel did not stray from the wide range of professionally competent assistance in allowing Harkin's argument to proceed without objection.

you. But remember what is important is what you heard, the facts that you heard, not what I say and not what Mr. Brewer says.

The purpose of our argument here is merely to assist you in developing the theory of each of our respective sides. We are advocates. We represent a side, a different theory about the facts in this case.

*Id.* at 503–04. In addition, the first paragraph of Parker's challenged remarks, without omissions, appears this way in the trial record:

Our duty as prosecutors in this case has been to present the evidence as we developed it to you. We have a different type of duty than you would anticipate. It's different from that of a civil case in which lawyers represent one client or another. We represent the people of Iowa and Story County. In short, we represent you. We also represent the defendant because he is part of our society. Out [sic] duty is to ensure that he gets a fair trial. Our duty is to ensure that we have a just result.

*Id.* at 503. The last two sentences of the quoted paragraph, which, again, Seehan would have us ignore, explain Parker's statement about also representing the defendant and make it clear that he is doing no more than advising the jury of every prosecutor's duty to proceed fairly and to seek a just result.

As with Harkin's remarks in her opening statement, it is easy to see that a competent counsel readily could have chosen to refrain from objecting to any of Parker's comments. Taken in context, Parker's comments, like Harkin's comments in her opening statement, were not so clearly inappropriate as to demand objection, and in fact the state post-conviction court found that none of these comments amounted to prosecutorial misconduct. *See* Findings of Fact, Conclusions of Law and Order Denying Post–Conviction Relief at 15, 16. We therefore cannot conclude that defense counsel's failure to object to these statements fell outside the range of competent lawyering. In fact, the record shows that defense counsel recognized the emotional appeal of the state's argument and

chose to counter it with a forceful and emotional closing argument of his own. This was an entirely reasonable strategic choice and cannot properly be viewed as deficient lawyering.

Under *Strickland,* Seehan must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687, 104 S.Ct. at 2064. This means that Seehan must overcome the strong presumption that in the circumstances of his case "the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Seehan has fallen far short of making the necessary showing.

Similarly, we conclude that Seehan has failed to show that he suffered any prejudice, in the *Strickland* sense, as a result of his counsel's alleged omissions. At trial, it was undisputed that Seehan had caused his two-year-old son's death by smothering him with a pillow. Uncontradicted testimony established that to kill a child in this fashion would take anywhere from four to fifteen minutes. The state presented a strong case, apparently found convincing by the jury, that Seehan, acting with premeditation, killed his son to spite the child's mother, who was seeking a divorce from Seehan and who had informed him she wanted custody of the boy.

But whatever the jury ultimately may have thought regarding Seehan's motive, the fighting issue at trial was whether Seehan was sane when he took his son's life. The trial spanned some eight days, starting on April 28, 1976, with counsel's opening statements and concluding with the submission of the case to the jury on May 5, 1976. The trial record runs 540 pages, not including the reading of the instructions to the jury. A large portion of the trial was given over to the testimony of the mental health professionals who appeared for each side. Having thoroughly reviewed the record, we do not believe that the statements of the prosecutors upon which the District Court relied for its result had any significant effect upon the

jury's verdict. As noted earlier in this opinion, the Iowa Supreme Court, in affirming the denial of Seehan's application for post-conviction relief, *Seehan v. State*, 473 N.W.2d 208 (Iowa 1991) (table), concluded that the state's evidence of Seehan's guilt of first-degree murder was "overwhelming" and that Seehan had not demonstrated "any likelihood that the outcome of the 1976 criminal trial would have been different but for counsel's omission." *Seehan v. State*, No. 116/90–506, slip op. at 3. Our review of the record leaves us firmly convinced that this conclusion is correct. In short, Seehan has failed to establish the "prejudice" component of his ineffective assistance claim, *i.e.*, he has failed to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, *quoted in Lockhart v. Fretwell*, 506 U.S. at 369, 113 S.Ct. at 842 (1993).

For the reasons stated, we conclude that Seehan has failed to establish either component of the *Strickland* standard, much less both of them. Thus his ineffective-assistance-of-counsel claim must fail.

### IV.

The District Court's grant of habeas relief to Seehan is reversed and the case is remanded for entry of judgment denying the writ.

BEAM, Circuit Judge, with whom HEANEY and McMILLIAN join, dissenting.

The district court's grant of the writ should be affirmed. There is no question

that the prosecution's statements were improper and pervaded both opening argument and closing summation. Defense counsels' failure to object in any way fell well below the standard of reasonable representation "demanded of attorneys in criminal cases." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Such deficient performance resulted in prejudice to Seehan, in that the jury probably considered improper factors when reaching its result. Given the strong evidence on both sides as to Seehan's turbulent state of mind at the time of the crime, the centrality of that question, and the horror of the underlying and uncontested act, the prosecution's improper arguments injected wild cards into the jury's deliberations and rendered the result of Seehan's trial unreliable.[1] *Id.* at 687, 104 S.Ct. at 2064. Had the jury not been asked to consider improper factors, there is at the very least a reasonable probability that the result would have been different.[2] Seehan has thus established that he was provided with ineffective assistance of counsel at his trial, and, under *Strickland*, should be granted a writ of habeas corpus.

Contrary to the state's assertion, which the majority apparently also rejects, the state court's finding of no prosecutorial misconduct does not amount to a finding that the statements were proper. The state sets up the false tautology that improper statements equal prosecutorial misconduct, and therefore no misconduct equals no improper statements. Through this device, the state argues that there is a state court finding that the statements were not improper, a finding to which we must defer. This is disingenuous and just plain wrong. All of the state-

---

1. The facts illustrate the closeness of the question of Seehan's state of mind. He was a devoted and loving father, who had been deeply involved in his son's care and who became the primary care taker when his wife abandoned the family. When Tommy's custody became a bargaining chip in the separation, Seehan attempted to commit suicide. During this suicidal episode, he impulsively killed his son and continued with botched suicide attempts. The trial centered on opposing expert testimony as to Seehan's state of mind at the time of his tragic act.

2. Persuading the jury on Seehan's tortured state of mind was crucial to a determination of wheth-

er first or second degree murder was the appropriate verdict. If first degree, the sentence was life imprisonment without possibility of parole. If second degree, the sentence would have been, at most, 50 years. Seehan has now served 20 years in prison. He is presently an honor lifer at the medium security prison at Clarinda, Iowa. Had he had effective assistance of counsel in the face of the egregious conduct of prosecutor Harkin, it is very likely that he would be out of prison today rather than being indefinitely warehoused at taxpayers' expense for his solitary aberrant act.

ments of which Seehan complains are of the sort which have been universally condemned, and are clearly objectionable. That the state court did not feel that their utterance singly or in combination amounted to prosecutorial misconduct, a question of state law, in no way gives the statements the imprimatur of propriety and in no way relieves Seehan's counsel of their duty to object to such statements.[3]

Granting the writ, therefore, does no violence to the state reviewing court's findings of fact. Whether or not the pregnant prosecutor rubbed her abdomen (and the state court, contrary to the state's assertion, made no finding as to that issue), the recorded statements made to the jury were myriad and not subtle in nature.[4] While it might be arguable that a reasonably competent attorney may not have immediately objected to the first, or even the second, improper statement, no reasonably competent attorney would have permitted the prosecution to amass such a wealth of impermissible argument without at least some objection. Such

passivity falls well outside the range of competence required of criminal attorneys. *See Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064–65 (on federal habeas, the first prong of ineffective assistance is established when petitioner shows that his or her attorney's performance falls below a standard of reasonableness as measured by prevailing professional standards).

In considering the prejudice prong of ineffective assistance, the state makes the novel and alarming argument that whether or not deficient performance operated to a defendant's detriment to the extent that relief is in order, is a question of fact. Ergo, according to the state, when the state court considered the prosecutorial misconduct claim and determined that the prosecutors' improper statements did not so bias the jury as to change the outcome of the trial, it made a finding of fact binding upon us. Alternatively, the state argues that the state court's resolution of the state law prosecutorial misconduct claim is determinative of our resolution of the question of federal law arising

---

**3.** The state's reliance, in its brief, on *Pickens v. Lockhart,* 4 F.3d 1446, 1453 (8th Cir.1993) for its argument to the contrary, apart from the question of whether *Pickens* is rightly or wrongly decided, is based on a misunderstanding of the issue in that case. In *Pickens* the question presented was whether a prosecutor's comments were so egregious that they resulted in a deprivation of due process. Here the question is whether Seehan's counsel should have objected to the prosecutors' improper argument. Effective assistance of counsel requires more than that counsel object to conduct which amounts to a deprivation of due process. Likewise, the *Strickland* prejudice test does not require that deficient performance result in a trial that is so unfair that it would amount to a deprivation of due process even had counsel performed adequately. Rather, it requires that there be a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. In a word, *Pickens* does not apply to the issues before the court.

**4.** The district court divided the objectionable argument into three categories: improper suggestion of personal knowledge of guilt; improperly placing the burden of solving societal problems on the jury; and improperly inflaming the jury's passions. Some examples from the first category are: that the state "spent ... long and serious hours going over the facts of this case," "six months of anguish," "they are not giving me enough money to try and convict an innocent

person," the prosecution's "duty ... has been to present the evidence as we developed it to you. We have a different type of duty than you would anticipate. It's different from that of a civil case in which lawyers represent one client or another. We represent the people of Iowa and Story County. In short, we represent you [the jury]. We also represent the defendant because he is part of our society[,] ... our duty is to ensure that we have a just result."

Examples from the second category are: "you [the jury] today and throughout the course of this trial will be representing society," "society demands justice for this kind of act. That is the oldest rule. It's been in existence ever since mankind developed. Thou shalt not kill." "[J]urors are part of that law enforcement chain" which is "only as strong as its weakest link." "Tommy Seehan [the victim] demands that verdict" of "guilty of the highest degree."

Examples from the third category are: the victim "was the kind of little boy that I would like to have. He was the kind of little boy that you would like to have." "He is cold, he is dead, he is buried, and he will laugh no more." As noted in the district court's well reasoned opinion, the trial was "littered" with "perva[sive]" improper comments by the prosecution to which defense counsel made not one objection. *Seehan v. Iowa,* No. 4:91–CV–50363, slip op. at 19, 22 (S.D.Iowa July 12, 1993). The statements set out above are merely illustrative and are by no means exhaustive.

under the *Strickland* claim. I note that the majority rightly rejects the vein of these, and parallel, arguments in arriving at its decision.

These arguments are fundamentally misguided and ignore the rulings of both this court and the United States Supreme Court. Ruling on deficient performance and prejudice require courts to make a legal determination by applying legal standards to the underlying facts. *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070. What happened, what normally happens, who said or failed to say what, what was the state of the evidence, etcetera, are the questions of fact which must be answered in order to make that legal determination. That facts must be found in order to apply the law in no way transforms the ultimate legal question into a finding of fact. *See, e.g., id.; Drew v. United States,* 46 F.3d 823, 825 (8th Cir.1995); *Grooms v. Solem,* 923 F.2d 88, 90 (8th Cir.1991); *Couch v. Trickey,* 892 F.2d 1338, 1341 (8th Cir.1989). The determination of whether prejudice resulted from facts A, B, and C, is an application of the law to the facts, and thus is afforded little or no deference. Argument to the contrary reflects a misconception of legal principles.

The state's parallel assertion that the state court determination of no prejudice arising from the prosecutorial misconduct binds us on the federal legal question of *Strickland* prejudice must also fail. The Supreme Court has specifically and wisely held that a state court finding on ineffective assistance is not binding on federal habeas courts.[5] *See, e.g., Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070; *Grooms,* 923 F.2d at 90. Such holding necessarily applies to the prongs of the *Strickland* test, or review of ineffective assistance claims would be an exercise in futility. A contrary rule would, in fact, render federal habeas meaningless for any claim which the state courts have addressed and rejected.

Of course, absent cause and prejudice or actual innocence, procedural default rules already operate so that federal habeas is available *only* for those claims which the state courts have addressed and found meritless.

In other words, states could insulate themselves from any federal vindication of federal constitutional rights by simply deciding the merits on parallel state law grounds. While comity and federalism are important and weighty principles, they are not the only values underlying the Constitution and our federal jurisprudence. The Constitution also demands vindication of the federal constitutional rights of individual citizens, especially against governmental overreaching. The analytical framework proposed by the State of Iowa would have us abdicate that fundamental, albeit frequently unpopular, duty.

The writ of habeas corpus is intended to protect citizens from lawless incarceration, obtained through the disregard of constitutional rights. *See McCleskey v. Zant,* 499 U.S. 467, 477–79, 111 S.Ct. 1454, 1461–62, 113 L.Ed.2d 517 (1991). Under the Fourteenth Amendment, the federal Constitution guarantees all citizens effective representation of counsel in serious criminal cases, state or federal. *Strickland,* 466 U.S. at 685–86, 104 S.Ct. at 2063–64. A conviction obtained through provision of ineffective assistance of counsel is void. *Id.* Citizens incarcerated under such unfair convictions cannot be deprived of federal relief through the device of rejecting parallel state law claims. *See id.* at 698.

Thus whether or not the facts support a finding of *Strickland* prejudice is a question of federal law which we address de novo. *Drew,* 46 F.3d at 825; *see generally, Foster v. Delo,* 11 F.3d 1451, 1454–59 (8th Cir.1993). This is necessarily a question on which reasonable minds can and often do disagree. As I stated initially, I believe that Seehan's counsels' failure to object to the stream of improper statements shown in the record render the results of the trial unreliable and create a reasonable probability that had counsel acted, the outcome would have been different. I emphasize that the outcome would have been different, not that Seehan would have been completely exonerated. Much has been made of the "overwhelming evidence" of guilt however, Seehan has never contested his act, only his state of mind. With such a close question about such an

---

**5.** Notably, *Strickland* itself was a habeas case dealing with alleged ineffective assistance of counsel. In considering that claim, the Supreme

Court gave no deference to previous state court determinations that there had been no ineffective assistance.

appalling act, a barrage of inflammatory argument and insinuation of special knowledge prejudices the admitted perpetrator.

In an attempt to minimize the impropriety of the prosecutors' remarks, the state argues that both sides made emotional appeals; this is beside the point. First, a defendant, unlike the state, is permitted to throw himself on the mercy of the jury. Second, impropriety on the part of a defendant (such as presenting perjured testimony) does not permit the state to engage in parallel impropriety. Finally, the question is not whether the prosecutors were acting in bad faith, or even in ignorance, but whether defendant's counsel should have intervened with objections, and whether such failure prejudiced the defendant. The answer, on both accounts, is yes.

The majority's contention that the prosecution's prefacing this mass of improper argument with disclaimers as to the nonevidentiary nature of the words somehow prevented any prejudice to Seehan, even admitting deficient performance, is more than problematic. Thus, a prosecutor is freed to make inflammatory arguments and inferences of special knowledge, so long as he or she remembers to disclaim their validity. With this I must disagree.

Accordingly, I dissent.