**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jesus Morales ALONZO, Defendant– Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gilberto ALONZO, Defendant–Appellant.**

**Nos. 92–2846, 92–2847.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1992.

Decided April 27, 1993.

Thomas M. Peterson, Moorhead, MN, argued, for Jesus Alonzo.

Michael C. O'Neel, Fargo, ND, for Gilberto Alonzo.

Keith W. Reisenauer, Fargo, ND, argued, for the U.S.

Before McMILLIAN, BOWMAN, and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

Jesus Morales Alonzo and Gilberto Alonzo appeal their convictions for conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. They contend that the district court erred in admitting out-of-court statements that a conspirator, Reynaldo Martinez, made while cooperating with the police after his arrest. We conclude that the statements were inadmissible hearsay and that this was not harmless error. Accordingly, we reverse.

### I.

Martinez and his girl friend, Angela Littlebird, were arrested by North Dakota narcotics agents after selling two ounces of cocaine to confidential informants for $4300. Martinez agreed to cooperate. He named his cocaine supplier as Jesus (Jesse) Alonzo and said that he still owed $2000 for the two ounces of cocaine. Federal agent Mark Sorenson then dialed the Alonzos' residence from Fargo police headquarters, using a phone number provided by Martinez. Martinez engaged in a brief, tape recorded conversation in Spanish. After hanging up, Martinez told the agents he had arranged to meet Jesse Alonzo that evening at a Moorhead, Minnesota bar to pay the $2000. The agents wired Martinez with a body transmitter, gave him $2000 in marked money, and escorted him to the rendezvous. Local police went to the Alonzos' residence where they saw Jesse and Gilberto leave in a white Ford Tempo which police followed to the Moorhead bar.

After Martinez played a game of pool with the Alonzos in the bar, the three men walked to the parking lot and entered the Alonzos' car. The agents could not see into the car because of its tinted windows, and the brief conversation was inaudible despite Martinez's transmitter. Martinez emerged moments later. Agents stopped the car and arrested and searched the Alonzos. They found the $2000 in marked money on Jesse Alonzo, and 0.3 grams of cocaine and $1066 in cash on Gilberto Alonzo. At the same time, Martinez was searched again; he now had a small amount of cocaine and no marked money in his possession. Gilberto admitted that he had brought an unspecified amount of cocaine from Mission, Texas; police found 2.9 grams at the Alonzos' residence.

At trial, the government's principal witnesses were agents who testified to the events leading up to the Alonzos' arrest. To set the stage for that evidence, Littlebird was the prosecution's first witness. She described how she arranged the two-ounce sale for Martinez and how they were arrested after making the sale, but she

could not identify the Alonzos. Agent Daniel Baumann was the next witness. After he described Martinez's arrest, Baumann was asked:

Q. You at that time began talking to Mr. Martinez?

A. That is correct.

Q. He gave you a statement then?

A. Not at that immediate time. He did tell us that he was willing to cooperate with the investigation.

\* \* \* \* \* \*

Q. And in terms of his cooperation, what did Mr. Martinez indicate he would be willing to do.

A. ... [T]hat he'd be willing to tell us everything about the transaction, his involvement in the transaction and where he obtained the cocaine originally.

Q. And what did he tell you?

\* \* \* \* \* \*

A. Martinez told us that on the previous day he had obtained cocaine.

[Defense counsel]: Objection, Your Honor.... Hearsay.

[The Prosecutor]: Your Honor, it's a coconspiracy statement plus it's also not hearsay, does not go to the truth of the matter asserted....

THE COURT [outside the hearing of the jury]: I'm going to conditionally admit the statement as hearsay. I think it is hearsay.... [T]here is sufficient evidence for the Court to make a conditional ruling that conspiracy existed. The statement is being admitted subject to the *defendants'* objection. Government will be required to prove the statement is made in the course and furtherance of the conspiracy. At the conclusion of all the evidence.... [i]f the Court determines that the government has failed to carry its burden, then the Court will entertain an appropriate motion from the defendants....[1]

Thereafter, agents testified without further objection to the following post-arrest statements made by Martinez:

*Testimony by Agent Baumann:*

● That Martinez had obtained the two ounces of cocaine from Jesse Alonzo.

● That Martinez had paid $1000 and still owed Jesse Alonzo $2000 for the two ounces, which was to be paid as soon as the cocaine was resold to Littlebird's customers.

*Testimony by Agent Sorenson:*

● That Martinez had obtained the two ounces of cocaine from Jesse Alonzo, agreed to pay Alonzo $3000 of which $2000 was still owed, agreed to pay Littlebird $300 for arranging the $4300 resale, and would keep $1000.

● That Martinez agreed to make a phone call to the Alonzos' residence, and gave Sorenson the phone number.

● That Martinez and Jesse Alonzo always discussed drug transactions over the phone in Spanish.

● That, after the Spanish language phone call, Martinez said he had agreed to meet at the East Gate Lounge in Moorhead to pay Jesse Alonzo the $2000 and that Alonzo would bring Martinez more cocaine.

● That Jesse Alonzo provided the cocaine police found in Martinez's possession after he met with the Alonzos.

On cross examination, the defense established that Martinez's information was the agents' sole basis for suspecting the Alonzos of criminal activity at that time.

The government also introduced a transcript of the phone call from Martinez to "Jesse,"[2] Gilberto's post-arrest admissions, evidenced seized following the Alonzos' arrest, and expert testimony identifying the seized substances as cocaine and explaining

---

**1.** We approved this procedure for determining the admissibility of conspirator statements under Fed.R.Evid. 801(d)(2)(E) in *United States v. Bell,* 573 F.2d 1040, 1044 (8th Cir.1978).

**2.** This was read into the record by a translator and included the following colloquy:

Martinez: Do you want to come to get the money?

why records seized at the Alonzos' residence appeared to reflect cocaine distribution transactions. Martinez did not testify, and neither did the Alonzos.

At the close the government's evidence, defense counsel renewed their objection to the Martinez statements:

[Defense Counsel]: I would also move, Your Honor, that any of the evidence received regarding the hearsay testimony that's been given in these proceedings be suppressed because those statements were not made in the furtherance of the conspiracy....

\* \* \* \* \* \*

THE COURT: What statements would you be referring to?

[Defense Counsel]: Identifying that, for example, that his source of cocaine was Jesus Alonzo.... I'm [sub]mitting that such a statement doesn't further the conspiracy and in fact harmed the conspiracy, in this case ended the alleged conspiracy.

THE COURT: Anything else?

[Defense Counsel]: That's it.

\* \* \* \* \* \*

THE COURT: Okay. The Court's of the view that the Martinez statements relating to his source [and] the other hearsay statements that the Court has admitted under 801(d)(2)(E) are admitted as being coconspirator statements given in the course of the conspiracy and in furtherance of the conspiracy.

On appeal, the Alonzos challenge that ruling. The government argues that the statements were not hearsay under Fed. R.Evid. 801(c) because they were not offered "to prove the truth of the matter asserted," an argument that the district court rejected. The government further argues that the statements were properly admitted under Rule 801(d)(2)(E) because they were made by a coconspirator during the course and in furtherance of the conspiracy, and that any error was harmless.

## II.

**A. Rule 801(d)(2)(E).** The district court's ruling that all of Martinez's post-arrest statements to law enforcement officials were in furtherance of his conspiracy with the Alonzos was clearly erroneous. As the Supreme Court said in *Fiswick v. United States*, 329 U.S. 211, 217, 67 S.Ct. 224, 227, 91 L.Ed. 196 (1946):

[C]onfession or admission by one co-conspirator after he has been apprehended is not in any sense a furtherance of the criminal enterprise. It is rather a frustration of it.... So far as each conspirator who confessed was concerned, the plot was then terminated. He thereupon ceased to act in the role of a conspirator. His admissions were therefore not admissible against his erstwhile fellow-conspirators.

*See also Wong Sun v. United States*, 371 U.S. 471, 490, 83 S.Ct. 407, 418–19, 9 L.Ed.2d 441 (1963). Rule 801(d)(2)(E) was explicitly drafted to ensure "consisten[cy] with the position of the Supreme Court in denying admissibility to statements made after the objectives of the conspiracy have either failed or been achieved." Advisory Committee Note to Rule 801; *see United States v. Harris*, 546 F.2d 234, 237–38 (8th Cir.1976). In-custody declarations incriminating others lack the "indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970); *see United States v. Riley*, 657 F.2d 1377, 1381–85 (8th Cir. 1981). Martinez's stationhouse statements

Jesse: Yes. I'm coming in a little while. Are you going to be there for a while or what?
Martinez: I am going to East Gate.
    \* \* \* \* \* \*
Martinez: Do you have any left?
Jesse: Of that?
Martinez: Uh-huh.

Jesse: A little bit for us, for us to.
Martinez: Oh, really?
Jesse: Yes. Do you need some for yourself or what?
Martinez: Yes.
Jesse: We will bring a little.

identifying his cocaine source were not intended to further a successful conspiracy and were therefore inadmissible against the Alonzos under Rule 801(d)(2)(E). *See United States v. Carper*, 942 F.2d 1298, 1301 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 614, 116 L.Ed.2d 636 (1991); *United States v. Kindle*, 925 F.2d 272, 277–78 (8th Cir.1991).

The government correctly notes that many cases have held that statements identifying a conspirator's source, even when made to undercover agents or informants, were made in furtherance of the conspiracy.[3] The statements in those cases, however, were not made to *known* police agents; the declarants believed they were dealing with a compatriot or customer and spoke "to allay apprehension and insure good relations for possible future sales" or otherwise to promote the success of the criminal enterprise. *United States v. Krevsky*, 741 F.2d 1090, 1095 (8th Cir.1984). On the other hand, conspirator statements to a known police agent are admissible under Rule 801(d)(2)(E) only if intended to allow the conspiracy to continue, for example, by misleading law enforcers. *See United States v. Garcia*, 893 F.2d 188 (8th Cir. 1990); *United States v. Fahey*, 769 F.2d 829, 839 (1st Cir.1985). In this case, to further his own interests, Martinez implicated his cohorts and assisted the agents in ending the criminal enterprise.

■■ Because these convictions must be remanded for a new trial, we note that not all of Martinez's post-arrest statements suffered from this defect. The admission of his recorded phone call to Jesse from police headquarters, without objection, was not plain error. Jesse's statements in that conversation were clearly in the course and in furtherance of his role in the conspiracy; they were admissible under Rule 801(d)(2)(E) against all conspirators. *See United States v. Lewis*, 759 F.2d 1316, 1348 (8th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985). Although Martinez's statements in that conversation were arguably inadmissible because he had ended his role in the conspiracy, a certain amount of otherwise inadmissible conversation may be admitted to avoid jury confusion. *See United States v. Smith*, 578 F.2d 1227, 1238 (8th Cir.1978); *United States v. Williams*, 548 F.2d 228, 232 n. 14 (8th Cir.1977). Thus, in some cases we have simply admitted the entire conversation. *See United States v. Johnson*, 925 F.2d 1115, 1117 (8th Cir.1991).

■ *B. Rule 801(c).* The government's Rule 801(c) argument has greater merit. Once Martinez stated that he was willing to cooperate and owed his cocaine supplier $2000, the stationhouse conversation changed from pure interrogation to the planning of a controlled payoff. Martinez's statements to the agents formed the background for their later actions. The agents' conduct in placing and recording Martinez's phone call to "Jesse," following the Alonzos' car to the arranged meeting place, supplying Martinez with marked money, arresting the Alonzos after Martinez left their car, and seizing the marked money, additional cash and cocaine, and apparent drug transaction records was relevant, admissible evidence because the agents were firsthand participants. The government's theory—that the statements are not hearsay if offered only to explain why the agents did what they did—finds considerable support in prior cases. *See Anderson v. United States*, 417 U.S. 211, 220, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974) (statements offered "simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false" are not hearsay); *United States v. Evans*, 883 F.2d 496, 501 (6th Cir.1989) ("statements … only offered to construct the sequence of events leading up to the drug transaction … [were] not hearsay"); *United States v. Postal*, 589 F.2d 862, 888 (5th Cir.), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979). On the other hand, if a conspirator statement is both permissible background and

---

**3.** *E.g., United States v. Meggers*, 912 F.2d 246, 249–50 (8th Cir.1990); *United States v. Fitts*, 635 F.2d 664 (8th Cir.1980); *United States v. Lamb-*ros, 564 F.2d 26, 30 (8th Cir.1977), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978).

highly prejudicial, otherwise inadmissible hearsay, fairness demands that the government find a way to get the background into evidence without the hearsay.

■ The district court prevented the proper development of this issue when it dismissed out of hand the prosecutor's Rule 801(c) response to the initial hearsay objection. Had the court been properly apprised of the parameters of this issue,[4] it would have seen the need both to allow the agents to adequately explain their surveillance and apprehension activities, and also to eliminate prejudicial interrogation hearsay. The problem with out-of-court statements such as, "Jesse Alonzo is my source and I still owe him $2000," is that while they may be *offered* as background for the agents' actions, they will inevitably *be used* as direct evidence of Alonzo's guilt, which the hearsay rules prohibit. Thus, to hold the government to its stated non-hearsay purpose and to prevent undue prejudice, the trial court should instruct the prosecution to avoid hearsay statements whenever possible in presenting its background evidence, and should instruct the jury as to the limited purpose of any hearsay statements that cannot be avoided.[5] In other words, faced with a Rule 801(c) issue, the district court must control and limit the use of background hearsay statements as the trial develops, a process quite different than the *Bell* procedure used for admitting conspirator hearsay under Rule 801(d)(2)(E).

■ *C. Harmless Error.* Having concluded that the district court erred in admitting the Martinez hearsay, we come to the most difficult question in this case,

harmless error. In moving at the end of trial to exclude the Martinez hearsay, defense counsel mentioned only Martinez's statement identifying Jesse Alonzo as the source of the two ounces of cocaine. That was damaging hearsay, but in the context of this case, it was probably harmless error. The other admissible evidence identifying the Alonzos as the cocaine suppliers—the taped phone call to "Jesse," their arrest with the marked money after providing Martinez more cocaine, and the evidence seized at their residence—made the identification hearsay little more than cumulative, as evidenced by the fact that the jury also convicted Gilberto, who was not identified by Martinez as his source.

■ Far more troubling, however, is Martinez's hearsay statement that he owed his source $2000 *for the purchase of the two ounces of cocaine.* This was the linchpin of the prosecution's case. Unless the jury believed that the Alonzos had sold two ounces, a distribution quantity, all the other evidence might fall considerably short of proving the *charged* crime, conspiracy to possess *with intent to distribute.* When the prosecution elected not to call Martinez as a witness,[6] it sacrificed its only direct evidence that the $2000 was paid for the cocaine. The jury might still have been persuaded by the considerable circumstantial evidence that the Alonzos had "fronted" the two ounces of cocaine to Martinez and the $2000 was in fact a payment for that transaction. But this crucial aspect of the prosecution's case was greatly enhanced by its use of the inadmissible Martinez hearsay to that effect. We cannot uphold the admission of this evidence under the rigorous standard for harmless error.[7]

---

4. A pre-trial motion in limine to exclude the hearsay would have warned the trial judge what was coming but probably would not have produced a definitive ruling. A detailed offer of proof by the prosecutor at the time the initial hearsay objection is made is probably the best way to ensure proper handling of this issue.

5. However, because of the seriously prejudicial effect of incriminating conspirator hearsay, the trial court cannot rely upon cautionary instructions as a cure-all for this problem. *See Smith,* 578 F.2d at 1238 (Lay, J., concurring).

6. At oral argument, counsel stated that Martinez had changed his story at a prior hearing and now claimed that his statements and cooperation were coerced.

7. "[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). *Compare United States v. Mothershed,* 859 F.2d 585, 590–91 (8th Cir.1988);

We have also considered whether the $2000–for–drugs issue was properly preserved. After the district court's initial ruling, which failed to note that some Martinez statements might be admissible as non-hearsay background, defense counsel was content to wait until the end of trial to raise the issue again, and even then could not identify any specific Martinez statement that should be excluded other than the identification of Jesse Alonzo as Martinez's source. We suspect the defense "lay in the weeds" on this issue, and the absence of specific objections to the Martinez hearsay as it was introduced no doubt resulted in the offer of more hearsay than was necessary or than would have been offered had the issue been properly framed. Nonetheless, the district court specifically ruled at the end of trial that all hearsay objections had been properly preserved. It was the prosecution's obligation to prove its case with admissible evidence. Because the government's case was prejudicially enhanced by inadmissible hearsay, a new trial must be granted.

The judgments of conviction are reversed and the cases are remanded for a new trial.

*United States v. Ray,* 768 F.2d 991, 995 (8th Cir.1985).