_____

No. 95-1900
_____

Michael A. Garrett,                    *
                                       *
          Appellant,          *   Appeal from the United States
                                  *    District Court for the
     v.                           *    Western District of Missouri
                                  *
United States of America,     *
                                  *
          Appellee.

_____

Submitted: January 10, 1996

Filed:    March 12, 1996

_____

Before BEAM, Circuit Judge, MORRIS SHEPPARD ARNOLD, Circuit Judge, and
KYLE,[*] District Judge.
_____

KYLE, District Judge.


     Michael A. Garrett appeals from the district court's denial of his
motion under 28 U.S.C. § 2255, in which he claims ineffective assistance
of counsel at his criminal trial, at sentencing, and on direct appeal, in
violation of the Sixth Amendment.  We affirm the district court.[1]


_____

     [*]The HONORABLE RICHARD H. KYLE, United States District
Judge for the District of Minnesota, sitting by
designation.

     [1]The Honorable Scott O. Wright, Senior United States District
Judge for the Western District of Missouri.

I.

Garrett was indicted for conspiracy to possess with intent to distribute fifty or more grams of crack cocaine, in violation of 21 U.S.C. § 846, and attempted possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841. A jury found him guilty on both counts. His post-trial motions for a judgment of acquittal or, alternatively, for a new trial were denied. On April 1, 1991, Garrett was sentenced to 360 months of imprisonment and five years of supervised release on each charge, the sentences to run concurrently, and was assessed a $25,000.00 fine. He appealed the judgment, claiming that there existed insufficient evidence to support his conviction, and that prior acts of a co-defendant were improperly admitted by the trial court. The conviction was affirmed. United States v. Garrett, 948 F.2d 474 (8th Cir. 1991), reh'g and reh'g en banc denied (Jan. 15, 1992).

On October 12, 1990, Drug Enforcement Agency ("DEA") Special Agent Carl Hicks and two detectives of the Platte County Sheriff's Office stopped a female suspect fitting a common drug courier profile at the Kansas City International Airport. She gave her name as Gloria Hernandez and admitted that she was smuggling crack cocaine in her luggage, a search of which revealed almost eight kilograms of crack cocaine. She later admitted that her true name was Alicia Rodriguez. Trial Transcript at 61.

Rodriguez agreed to participate in a controlled delivery of the drugs. Her instructions, previously received from an unspecified source, were to check into a downtown motel "where a visiting black man would not stand out" and then contact "Mike," who would come to pick up the drugs. Id. at 28. After checking into a motel accompanied by Agent Hicks and one of the detectives, Rodriguez made two telephone calls, conversed in Spanish, and during the second call wrote down two telephone numbers. Agent Hicks called the second number, which was for a personal paging

-2-

service and included a personal identification number ("PIN"). After entering the PIN, he entered the motel's telephone number and Rodriguez's room number. Id. at 34-37.

Later, a person identifying himself as "Mike" called the motel, and the desk clerk transferred the call to Rodriguez's room. The caller had a brief conversation with Rodriguez, during which he stated he was on his way to the motel. Within the next thirty to forty-five minutes, a person identifying himself as Mike made three additional phone calls to the desk clerk requesting directions to the motel. Approximately fifteen minutes after the last call, Garrett entered the motel and asked for directions to room 117. He was arrested as he walked toward room 117. A search of Garrett's vehicle uncovered a mobile phone and a pager, in the electronic memory of which was stored the motel's telephone number and Rodriguez's room number. See 948 F.2d at 476.

Prior to calling its first witness at trial, the prosecution informed the district court that it would not call Rodriguez as a witness because of concerns over her credibility.[2] Agent Hicks, however, was allowed to testify as to what Rodriguez told him about her involvement in a conspiracy to distribute drugs, including her statement that the drugs were to be picked up by a black man named

---

[2]The following conversation regarding Rodriguez occurred out of the presence of the jury:

> THE COURT:     How's our witness?
> [Prosecutor]:  Our witness is fine, but we're not calling her.
> THE COURT:     Oh, you're not?
> [Prosecutor]:  No, no.  We basically told her she can withdraw her plea, the deal is off, that her lies have damaged her credibility too seriously for us to be able to call her.

Trial Tr. at 2.

"Mike."[3]  Defense counsel's objections to the statements as hearsay were overruled by the district court.[4]  Defense counsel proffered no instruction limiting the jury's consideration of these statements to explaining why Agent Hicks did what he did, but, at the charging conference, proposed an instruction completely barring the use of Rodriguez's statements against Garrett by the jury.  Trial Tr. at 173-76.

After Hicks' direct examination, the trial court sustained objections to defense counsel's attempts to impeach Rodriguez's credibility by questioning Agent Hicks about Rodriguez's plea

---

[3]After she was arrested at the airport, Rodriguez agreed to talk to Agent Hicks without an attorney present.  Agent Hicks testified on direct examination:

> Q.  What was the gist of the conversation after you advised her of her rights at the airport?
> A.  I asked her who she was taking the drugs to and she told me.
> Q.  What did she say?
>    [Defense counsel]: Objection, Your Honor, hearsay.
>    THE COURT: Overruled.
> A.  She said an individual by the name of Mike.
> Q.  Did she -- what did you do then?
> A.  I asked her if she would follow through on a controlled delivery, in other words, trying to transport the drugs to Mike, and she said that she would.
> Q.  What happened then?
> A.  I asked her how the delivery was supposed to happen and she said that she was supposed to check into a motel in the downtown area.  Her comment to me was a motel where a visiting black man would not stand out, and then she was supposed to page Mike on his 800 pager and he would come over to get the drugs.

Trial Tr. at 27-28.

[4]The district court stated in its opinion denying Garrett's § 2255 petition that Rodriguez's statements were not offered to prove the truth of the matter asserted, but to explain the actions of Agent Hicks.  Garrett v. United States, No. 94-0345-CV-W-5 (W.D. Mo. Feb. 9, 1995), attach. to Appellant's App. at 86a, 91a.

agreement with the government; the court did allow the fact that Rodriguez had recently entered into a plea agreement to be presented to the jury.[5]

During its closing argument, the prosecution stated that, contrary to defense counsel's assertions, Assistant United States Attorneys do not "go for convictions," but rather take an oath "to do justice." The prosecution then told the jury, "we come here before you asking you to do justice." Trial Tr. at 207. There was no objection to this portion of the prosecution's closing.

A pre-sentence investigation report ("PSI") concluded that Garrett was accountable for all of the crack cocaine found in Rodriguez's luggage. The district court asked defense counsel whether he had any objection to the PSI, and counsel indicated that he did not. Sentencing Tr. at 2. The court's calculation of Garrett's sentence under the Guidelines thus was based on the approximately eight kilograms of crack cocaine.

---

[5]The following exchange occurred on defense counsel's cross-examination of Agent Hicks:

Q. You entered into a written plea agreement, the prosecution did, didn't they, Mr. Hicks?
A. Yes, they did.
Q. Okay.
A. But that's the prosecutor and the defense attorney.
Q. That's a plea agreement that was entered into what, approximately a week ago with her?
A. I believe it was about a week ago.
Q. And that plea agreement was--
   THE COURT: Wait a minute. Wait a minute. Come up here.
      BENCH CONFERENCE, ON THE RECORD
   THE COURT: If you're not going to put her on as a witness, you don't need to get into that.
   MR. FOX: Judge, I think I have a right to enter into questions whether she's a truthful person.
   THE COURT: The objection will be sustained.

Trial Tr. at 52-53.

On April 12, 1994, Garrett filed a motion to vacate his sentence under 28 U.S.C. § 2255. The motion asserted seven instances of ineffective assistance of counsel at trial, at sentencing, and on direct appeal.

Garrett argues that he was denied effective assistance at trial because his attorney: 1) did not move to exclude Rodriguez's statements under Federal Rule of Evidence 403, as the danger of prejudice to him substantially outweighed the testimony's probative value; 2) did not request an instruction pursuant to Federal Rule of Evidence 105, limiting the jury's consideration of Rodriguez's testimony to explaining the actions of Agent Hicks; and 3) did not object to the prosecution's closing. Moreover, Garrett claims counsel was ineffective for failing to include the admission of Rodriguez's statements as a ground for a new trial in his post-trial motions. He also argues that he received ineffective counsel at sentencing because his attorney did not object to that portion of the PSI which determined Garrett was responsible for all of the crack cocaine found in Rodriguez's suitcases. Finally, he contends that counsel was ineffective in failing to appeal from the admission of Rodriguez's statements, since they constituted inadmissible hearsay, and in failing to appeal from the district court's refusal to permit more extensive impeachment of Rodriguez through Agent Hicks's cross-examination.

II.

The Sixth Amendment guarantees a criminal defendant charged with a serious crime the right to <u>effective</u> assistance of counsel. <u>Driscoll v. Delo</u>, 71 F.3d 701, 706 (8th Cir. 1995) (citing <u>United States v. Cronic</u>, 466 U.S. 648, 654, 104 S. Ct. 2039, 2044 (1984)). An analysis of an ineffective assistance of counsel claim involves two phases:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

With respect to the first element, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy.  466 U.S. at 689, 104 S. Ct. at 2065.  Counsel's challenged conduct is to be evaluated in light of the circumstances surrounding the decision, not with the 20/20 vision of hindsight.  Id.

Establishing prejudice is also not a simple task--a defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694, 104 S. Ct. at 2068.  A reasonable probability is one "sufficient to undermine confidence in the outcome."  Id.

Whether Garrett's Sixth Amendment rights were violated because he received ineffective assistance of counsel presents a legal question subject to de novo review.  Driscoll, 71 F.3d at 706 (citing Starr v. Lockhart, 23 F.3d 1280, 1284 (8th Cir.), cert. denied, ___ U.S. ___, 115 S. Ct. 499 (1994)).

A.  Ineffective Assistance of Counsel at Trial
    1.  Lack of a Rule 403 Objection
    The failure of Garrett's attorney to move to exclude Rodriguez's testimony under Federal Rule of Evidence 403[6] did not

---

[6]Federal Rule of Evidence 403 states in relevant part:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .

-7-

fall outside the wide range of competent professional assistance. The trial judge had ruled that the testimony was not barred by the hearsay rule, as it was not offered to prove that a man named "Mike" was to pay for the crack cocaine, but to show the reasons for Agent Hicks' behavior.[7] Since defense counsel had tested a most vulnerable aspect of Rodriguez's statements, counsel may have reasonably determined that a Rule 403 objection would have been fruitless. The performance of an attorney is not deficient because the attorney failed to object to admissible evidence, Anderson v. Goeke, 44 F.3d 675, 680 (8th Cir. 1995) (citing Russell v. Jones, 886 F.2d 149, 152 (8th Cir. 1989)), and the trial court had already determined that the statements were not hearsay. While we have doubts as to the correctness of the trial court's wholesale admission of the statements, the failure to renew an objection on different grounds did not constitute deficient performance from the perspective of counsel at trial.

The lack of a Rule 403 objection, moreover, does not give rise to a reasonable probability that Garrett would have been found not guilty by the jury. Speculation as to what the district court would have done if presented with this motion is not equivalent to a showing of prejudice sufficient to undermine confidence in the outcome of the trial. Nor was the evidence against Garrett flimsy or unpersuasive. On direct appeal, this court acknowledged that the evidence against Garrett on the conspiracy charge was

---

[7]It was unnecessary, however, to allow Rodriguez's statements to be heard by the jury without modification. The jury would have been able to understand why Hicks went to a motel room absent Rodriguez's statements explaining that "Mike," presumably a black man, was to pick up the crack cocaine. See infra Section II.A.2; 8th Cir. Model Crim. Jury Inst. 2.15, committee cmts.

circumstantial and "not overwhelming," but also observed that a reasonable fact-finder could have found Garrett guilty beyond a reasonable doubt based on the conversation between Rodriguez and Garrett, the obvious advance planning of the transaction's details, and the circumstances surrounding Garrett's arrival at the hotel. 948 F.2d at 476-77. In addition, a search of Garrett's vehicle pursuant to his arrest uncovered a pager which had the motel's telephone number and Rodriguez's room number stored in its memory. Id. at 476. Garrett has not shown that counsel's failure to object on Rule 403 grounds deprived him of a fair trial or rendered the result of the trial unreliable. See Lockhart v. Fretwell, 506 U.S. 364, ___, 113 S. Ct. 838, 844 (1993).

### 2. Lack of a Limiting Instruction Request

Garrett contends that defense counsel's failure to request an instruction limiting the jury's consideration of Rodriguez's testimony to an explanation of the actions of Agent Hicks represented deficient performance and resulted in prejudice to him. See Fed. R. Evid. 105.[8] Defense counsel did request a limiting instruction, based on Eighth Circuit Model Criminal Instruction 2.15, which limits a jury's consideration of a co-defendant's statements. The trial judge rejected it, apparently on the grounds that Instruction 2.15 did not apply in conspiracy cases. Trial Tr. at 173-75. The district court, in its opinion on Garrett's § 2255 petition, determined that counsel may have reasonably believed that a limiting instruction would serve only to underscore the importance of the testimony, yet the transcript of the proceedings indicates that defense counsel was willing to take that risk.

---

[8]Federal Rule of Evidence 105 reads:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

A limiting instruction would certainly have been appropriate here. We have previously noted that "if a conspirator statement is both permissible background and highly prejudicial, otherwise inadmissible hearsay, fairness demands that the government find a way to get the background into evidence without the hearsay." United States v. Alonzo, 991 F.2d 1422, 1426-27 (8th Cir. 1993). The trial court "should instruct the jury as to the limited purpose of any hearsay statements that cannot be avoided." Id. at 1427. Here, Garrett's first name and his race could have been redacted from the testimony with no risk of confusion as to the behavior of Agent Hicks. Without such procedures, there is a strong risk that the while the statements "may be offered as background for the agents' actions, they will inevitably be used as direct evidence" of the defendant's guilt. Id. (emphasis in original). In Alonzo, admission of similar statements by a co-conspirator did not pass the "rigorous standard for harmless error," and a new trial was ordered. Id. at 1427-28. Here, the "reasonable probability" demanded by Strickland, and the other evidence against Garrett, distinguish Alonzo. Even if the failure to request another instruction limiting the jury's consideration to an explanation of the behavior of Agent Hicks was ineffective assistance,[9] Garrett

_____

[9] A close reading of the trial transcript gives rise to an inference that counsel's requested instruction may have been denied in part because the trial court believed that Rodriguez's statements could be admitted as coconspirator declarations under Federal Rule of Evidence 801(d)(2)(E). Trial Tr. at 173-75. In its opinion denying Garrett's § 2255 motion, however, the district court explained that Rodriguez's conversation with Agent Hicks was not admitted as an authorized statement, a statement of an agent, or a declaration by a co-conspirator. In fairness to counsel, it was not made clear at the charging conference that the statements were admitted because they explained the actions of Agent Hicks. In fact, the rejection of counsel's instruction seems to have been partially based on the erroneous notion that Instruction 2.15 could not be used at all in "conspiracy cases"; the committee comments state that the instruction is not applicable where the disputed evidence is admitted as a coconspirator declaration, "or in any other situation in which the codefendant's statement may be directly admissible against the defendant."

-10-

has not shown that the failure to request a limiting instruction seriously compromised the integrity of the trial.

In United States v. King, 36 F.3d 728 (8th Cir. 1994), a convicted defendant challenged the trial court's admission of a DEA agent's statement that he started an investigation on information that a man named "Bill" was selling cocaine from a certain address while possessing a handgun. Id. at 731. The defendant's first name was William. In King, as here, the trial court received the statement as it was not offered for its truth, but to explain the actions of the agent--no limiting instruction was requested or given. Id. at 732. The King court found that the trial court did not abuse its discretion in determining to admit the evidence, and further found any error in the admission of the testimony, including the absence of a limiting instruction, to be harmless beyond a reasonable doubt based on the other evidence against the defendant. Id. at 732-33.[10]

That the other evidence against the defendant in King was characterized as "overwhelming," and the evidence here was previously characterized by another panel of this Court as "not overwhelming," 948 F.2d at 476, does not mandate an opposite result. The evidence against Garrett was significant and substantial. Garrett must prove that there exists a reasonable probability that the outcome of the trial would be different absent the alleged ineffective assistance--this is a more difficult standard to meet than proving that the error was harmless beyond a reasonable doubt. We find that he has not carried this burden.[11]

_____

[10]The "harmless error" standard applied since the defendant claimed a violation of his confrontation rights on direct appeal.

[11]In a related vein, Garrett argues that his counsel's performance was deficient because he did not dispute the admission of the "hearsay" testimony in his motion for acquittal or a new trial. Viewing the matter from counsel's perspective immediately after trial, counsel had no reason to believe that the court would reverse its earlier ruling which allowed Rodriguez's statements to become part of the record. Ineffective assistance should not be found under Strickland when counsel fails to perform those acts which clearly appear to be futile or fruitless at the time the

-11-

### 3. Lack of Objection to Prosecution Statements

Garrett also cites his counsel's failure to object to statements made by the prosecutor during closing argument as exhibiting ineffective assistance. The remarks concerning the integrity of the prosecution and their duty to do justice were clearly improper. United States v. Jones, 965 F.2d 1507, 1514 (8th Cir.), cert. denied, 506 U.S. 924, 113 S. Ct. 346 (1992), and cert. denied, 506 U.S. 924, 113 S. Ct. 346 (1992), and cert. denied, ___ U.S. ___, 113 S. Ct. 2418 (1993) (in evaluating closely similar remarks, court determined "[t]he prosecutor went too far in arguing her own credentials for truthfulness to the jury."). Even though defense counsel opined during his closing that the prosecution's goal was to accumulate convictions, harsher statements impugning the integrity of the prosecution have been held not to excuse misconduct by the prosecution in response. See id. (citing United States v. Young, 470 U.S. 1, 12-14, 105 S. Ct. 1038, 1044-46 (1985)).

However, Garrett's claim is not one for prosecutorial misconduct, but for his counsel's failure to object to the improper statements. Garrett relies on the finding of ineffective assistance of counsel based on a failure to object to inflammatory remarks by the prosecution in Seehan v. Iowa, 37 F.3d 389 (8th Cir. 1994), rev'd in part, 72 F.3d 607 (8th Cir. 1995) (en banc). In Seehan, the defendant was charged with the murder of a two-year-old child. The prosecutor was a visibly expectant mother at the time of trial. In her opening statement, she noted that the slain child "was the kind of little boy that I would like to have. He was the

---

decision must be made.

kind of little boy you would like to have." 37 F.3d at 391. During closing, the prosecution uttered remarks similar to those at issue here:

> Our duty as prosecutors in this case has been to present the evidence as we developed it to you. We have a different type of duty than you would anticipate. . . . We represent the people of Iowa and Story County. In short, we represent you. We also represent the defendant because he is part of our society.

Id.

Sitting en banc, the court held that defense counsel did not provide ineffective assistance in failing to object. 72 F.3d 607. The court found that all of the remarks, taken in context, were not so clearly improper as to demand objection, and that the petitioner also did not overcome the strong presumption that "the challenged action [the decision not to object] might be considered sound trial strategy." 72 F.3d at 611 (quoting Strickland, 466 U.S. at 689, 104 S. Ct. at 2065) (internal quotations omitted). It was also determined that the petitioner had failed to show prejudice as a result of his counsel's alleged omissions, based in part on the state's "strong" case. Id.

Here, the objectionable statements were confined to one portion of the prosecution's closing. Taken in context, they were not so egregious or "patently inflammatory" as to mandate an objection. Cf. Seehan, 37 F.2d at 391. Trial counsel's behavior did not fall below Strickland's standard of objective reasonableness.

## B. Ineffective Assistance of Counsel at Sentencing

In failing to object to the PSI, which concluded that he was accountable for all of the crack cocaine found in Rodriguez's luggage, Garrett contends that defense counsel again failed to provide effective assistance. The district court found that this claim was procedurally barred because Garrett could have raised the

claim on direct appeal, and further did not demonstrate cause and resultant prejudice from the omission of the claim on appeal.

Such a finding, however, denies the essence of Garrett's complaints. Garrett could not have raised the sentencing issue on appeal because his counsel, in an alleged exhibition of deficient performance, failed to raise the issue before the district court.  We have recognized that "[e]xcept in rare circumstances, claims of ineffective assistance of counsel should be raised for the first time in collateral proceedings under 28 U.S.C. § 2255 and not on direct appeal."  United States v. Jackson, 41 F.3d 1231, 1234 (8th Cir. 1994) (citing United States v. Lewin, 900 F.2d 145, 149 (8th Cir. 1990)).  On these facts, the merits of Garrett's claim should be addressed, since a § 2255 motion appears to be his only remedy.

Garrett argues that since he was only carrying $1,000.00, and Rodriguez stated that she was going to be paid $3,000.00 plus expenses, an objection to the PSI would have forced the government to prove that the "conspiracy" covered the entire amount of crack cocaine in Rodriguez's luggage.

It is not reasonable to infer that Garrett was going to purchase only one-third of the drugs on the sole basis of the discrepancy between the cash found on Garrett and the amount claimed by Rodriguez.  By the same token, it is not ineffective assistance to fail to object to a PSI that does not draw the unlikely conclusion that the amount of money that a defendant is carrying at the time of arrest conclusively determines the scope of the conspiracy.

If an objection had been raised, the government would have had to prove that the amount of cocaine Rodriguez possessed was attributable to Garrett by a preponderance of the evidence.  See United States v. Wise, 976 F.2d 393, 400 (8th Cir. 1992) (en banc), cert. denied, 507 U.S. 989, 113 S. Ct. 1592 (1993) (citations

omitted).  Here, there was sufficient evidence to support the PSI's findings, and counsel could have reasonably determined that objecting to the PSI would serve no purpose.[12]  This aspect of counsel's performance did not constitute ineffective assistance.

## C.  Ineffective Assistance of Counsel on Appeal

Garrett claims counsel made two constitutionally significant omissions in appealing his conviction; namely, 1) neglecting to argue on appeal that Rodriguez's statements were inadmissible hearsay, and 2) failing to argue that the district court improperly refused to allow Garrett to impeach Rodriguez's credibility through his cross-examination of Agent Hicks.

### 1.  Hearsay

The question here is not whether counsel's choice to omit the hearsay issue on appeal was an intelligent or effective decision, "but rather whether his decision was an unreasonable one which only an incompetent attorney would adopt."  Stokes v. Armontrout, 851 F.2d 1085, 1092 (8th Cir. 1988), cert. denied, 488 U.S. 1019, 109 S. Ct. 823 (1989) (quoting Parton v. Wyrick, 704 F.2d 415, 417 (8th Cir. 1983)).

The district court concluded that, since the evidence was not

---

[12]This case is dissimilar to United States v. Smith, 49 F.3d 362, 369 (8th Cir.), cert. denied, ___ U.S. ___, 115 S. Ct. 2009 (1995), and cert. denied, ___ U.S. ___, 115 S. Ct. 2264 (1995), where the sentence of the district court was vacated because the trial court relied exclusively on the testimony of a discredited witness in determining the amount of drugs attributable to the defendant.  Here, the district court was presented with evidence sufficient to convince a jury that Rodriguez and Garrett were engaged in a conspiracy to possess crack cocaine, and that Rodriguez had come to Kansas City to deliver almost eight kilograms of it.  Rather than relying solely on Rodriguez's testimony, the PSI drew a reasonable inference from the available evidence which the district court adopted and to which defense counsel did not object: Garrett was going to receive the entire shipment.

-15-

being used to prove the truth of the matter asserted and thus was not hearsay, appealing this issue would have been futile. <u>Garrett</u>, attach. to Appellant's App. at 92a. It is true that if there is no merit to a claim, failure to raise it on appeal does not result in ineffective assistance under <u>Strickland</u>. <u>See</u> <u>Thompson v. Jones</u>, 870 F.2d 432, 435 (8th Cir. 1988). Yet Rodriguez's statements, while they serve to fill in the gaps of Agent Hicks's story, also tend to identify Garrett as a drug purchaser or courier.

Garrett relies on <u>United States v. Azure</u>, 845 F.2d 1503, 1507 (8th Cir. 1988), in which a child's statement that the defendant had abused her was admitted through the testimony of an adult whom the child had told about the abuse, as an explanation of why the investigation focused on the defendant. On appeal, it was found that there was no proper "non-hearsay" purpose served by the evidence, since "[t]he only possible relevance of [the child's] identification of Azure and of the government's subsequent investigation of him is that he in fact was the person who abused her." <u>Id.</u> The admission of the error was held harmless, however, as this court noted that the primary justification for excluding hearsay is the lack of any opportunity to cross-examine the declarant, and observed that the child had been subject to cross-examination as a witness. <u>Id.</u> (quoting <u>United States v. Bohr</u>, 581 F.2d 1294, 1304 (8th Cir.), <u>cert. denied</u>, 439 U.S. 958, 99 S. Ct. 361 (1978)).

This Circuit has consistently held that an out-of-court statement is not hearsay "if it is offered for the limited purpose of explaining why a police investigation was undertaken." <u>United States v. Brown</u>, 923 F.2d 109, 111 (8th Cir.), <u>cert. denied</u>, 502 U.S. 833, 112 S. Ct. 110 (1991) (citation omitted) (court did not err in allowing detective to testify as to anonymous call informing him that defendants were selling crack cocaine at certain location). <u>See also</u> <u>King</u>, 36 F.3d at 732 (distinguishing <u>Azure</u>); <u>United States v. Collins</u>, 996 F.2d 950, 953-54 (8th Cir. 1993),

<u>cert. denied</u>, ___ U.S. ___, 114 S. Ct. 412 (1993) (police officer properly allowed to testify that search of apartment, during which incriminating evidence was found, was conducted because resident of apartment was defendant's girlfriend); <u>United States v. Cruz</u>, 993 F.2d 164, 169 (8th Cir. 1993) (court properly allowed detective to testify as to information received from unnamed sources that defendant distributed illegal drugs).

We find that counsel's failure to appeal the district court's hearsay ruling was not such an egregious error so as to indicate counsel was not functioning as counsel contemplated by the Sixth Amendment. <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. at 2064. The direct appeal was brought to this Court on the grounds of insufficiency of evidence and improper admission of a co-defendant's acts. In deciding whether to appeal the hearsay issue as well, Garrett's counsel was presented with substantial, recent, and at least facially contrary authority from this Circuit. The selection and "winnowing" of which issues to bring on appeal is a "hallmark of effective advocacy"; counsel is not required to raise every conceivable issue on appeal. <u>See</u> <u>Charron v. Gammon</u>, 69 F.3d 851, 858 (8th Cir. 1995) (quoting <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52, 103 S. Ct. 3308, 3313 (1983)); <u>Blair v. Armontrout</u>, 976 F.2d 1130, 1139 (8th Cir. 1992), <u>cert. denied</u>, ___ U.S. ___, 113 S. Ct. 2357 (1993) (quoting <u>Jones v. Barnes</u>).

Our observations in <u>Simmons v. Lockhart</u>, 915 F.3d 372 (8th Cir. 1990), are appropriate here:

> Certainly previously appointed counsel might have chosen to press this issue on appeal, and such a choice would have been reasonable. It does not follow that the opposite choice--to drop the issue--was unreasonable. Law is an art, not a science, and many questions that attorneys must decide are questions of judgment and degree. Among the most difficult are decisions as to what issues to press on appeal. . . . It is possible to criticize his choice in hindsight. Perhaps a choice to press the issue would have been better. But we are dealing, after all, with fallible human beings, and a

demand for perfection . . . cannot be met.

Id. at 375.


2.  Denial of Extensive Impeachment

Garrett's final contention is that his counsel provided ineffective assistance by failing to appeal the district court's refusal to allow impeachment of Rodriguez's credibility through Agent Hicks. At trial, however, defense counsel did ask Agent Hicks if the government and Rodriguez had entered into a plea agreement, and that Agent Hicks did concede that they had entered into such an agreement approximately one week prior to trial.  Trial Tr. at 52-53.  Garrett contends that further questioning of Agent Hicks should have been permitted, so that the jury could have learned that Rodriguez was not called because the government believed her to be an unbelievable witness.


Counsel's failure to appeal the impeachment issue is intimately connected to his failure to raise the hearsay issue, as  demonstrated by the language of Federal Rule of Evidence 806: "When a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by evidence which would be admissible for those purposes if the declarant had testified as a witness" (emphasis added).  Counsel, when deciding which issues to appeal, was faced with a clear and direct ruling by the district court that the testimony did not constitute hearsay at all, as well as a substantial amount of precedent supporting such a view under certain circumstances.  If the testimony of Agent Hicks did not contain hearsay, impeachment of the declarant under Rule 806 would be impossible.  Since we have determined that counsel's failure to appeal the hearsay ruling did not fall below a standard of objective reasonableness, his failure to appeal the limitation of his attempts at impeachment similarly does not indicate constitutionally deficient performance.  See infra Section II.C.1.

III.

We have carefully reviewed the entire record in this case and are satisfied that the defendant was not deprived of effective assistance of counsel and that there is no probability, but for the alleged unprofessional errors, that the result below would have been different.

For the reasons enumerated above, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT