**Pluria RICE, Petitioner,**

v.

**UNITED STATES of America,**

**Respondent.**

**Criminal No. 4–94–28(01).**
**Civil No. 97–427.**

United States District Court,
D. Minnesota,
Third Division.

July 22, 1997.

Virginia G. Villa, Federal Public Defender, Minneapolis, MN, for Defendant.

Pluria Rice, Pekin, IL, pro se.

Paul A. Murphy, Asst. U.S. Atty., Minneapolis, MN, for U.S.

## INTRODUCTION

RENNER, Senior District Judge.

Before the Court is a motion attacking Petitioner's conviction and sentence, brought pursuant to 28 U.S.C. § 2255. Petitioner argues that trial counsel provided ineffective assistance by advising Petitioner that "cocaine base" was synonymous with "crack" under the sentencing guidelines. After a careful review of the record, the Court concludes that Petitioner's motion may have merit. Accordingly, the Court will appoint counsel for the purpose of conducting appro-

priate discovery, and to assist Petitioner in presenting his collateral challenge.

## BACKGROUND

Petitioner pled guilty in 1994 to a charge of attempting to possess 276 grams of cocaine base with intent to distribute. At the time, Petitioner had a prior drug conviction; the plea agreement removed the specter of a notice under 21 U.S.C. § 851. Absent that guarantee, Petitioner faced a minimum sentence of twenty years. Additionally, Petitioner possessed a gun located in a closet at the time of his arrest at home where he had received the drugs. Under 18 U.S.C. § 924(c) as it had then been interpreted, Petitioner faced an additional minimum sentence of five years. Hence, the plea.

The plea agreement provided for a total offense level of 31 (Petitioner's motions for reduction and departure were denied). This yielded a range of 151–188 months, based on Petitioner's criminal history category of IV. Petitioner was sentenced to 151 months.

In this collateral challenge—his appeal on other grounds was unsuccessful—Petitioner attacks the quality of his representation. He argues that his counsel was unaware of then-recent Amendment 487 to the Sentencing Guidelines. While providing that "cocaine base," as used in the guidelines means "crack," U.S.S.G. § 2D1.1(c) as amended also makes clear that not all cocaine base is crack[1]. Pointing to relevant parts of the plea agreement and sentencing transcript, Petitioner argues that neither he, his attorney, nor the Court grasped the distinction, which resulted in him pleading guilty in the absence of proof that the substance he possessed was crack cocaine. He notes also that the chemist's report used against him simply stated that the substance was determined to be "cocaine base." Had he been properly counseled as to the Government's burden to prove the existence of crack cocaine, rather than "mere" cocaine base, Petitioner argues,

---

1. Amendment 487 provides:
   'Cocaine base', for the purpose of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form ... under this amendment, forms of cocaine base other than crack (e.g., coca paste, an intermediate step in the processing of coca leaves into cocaine hydrochloride, scientifically is a base form of cocaine, but it is not crack) will be treated as cocaine.

he would have rejected the plea. This may be an overstatement, given the other charges. However, it is clear that the sentencing range contemplated in the plea agreement would have been different. Given Petitioner's conviction history, the guideline range would have been a mere 37–46 months, although he still would have faced the minimum 120–month sentence required by statute. What is unclear is whether the Government could have proved that the substance was actually crack, so as trigger the enhanced penalties prescribed therefor.

## DISCUSSION

This Court has recently considered a similar § 2255 challenge, though one not involving an allegation of ineffective assistance. In *United States v. Murray*, petitioner claimed that the sentencing Court improperly determined that certain cocaine he had possessed constituted "crack" There were two issues: the correct standard of decision, and the evidence supporting a conclusion of prior error. The Court contrasted Murray's case with *United States v. James*, 78 F.3d 851 (3d Cir.1996), the leading case on this issue, which involved a similar claim on direct review. Instead, the Court relied on *Auman v. U.S.*, 67 F.3d 157, 161 (8th Cir.1995), where the Eighth Circuit determined that to the extent that guidelines application questions were collaterally reviewable at all, only those errors constituting a "miscarriage of justice" were cognizable under § 2255. Second, the Court, after reviewing the transcripts of the plea proceedings entertained no doubt whatsoever that Murray had been properly sentenced under the enhancements applicable to crack.

■ Petitioner's challenge is in a different posture. His substantive claim is presented through the medium of a Sixth Amendment challenge; if he succeeds, then his failure to present the claim on appeal is waived. *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1986); *Garrett v. U.S.*, 78 F.3d 1296, 1304 (8th Cir.1996) (failure to object to PSR). Petitioner must establish both the seriousness of trial counsel's deficiency, and prejudice amounting to "a reasonable probability that, but for coun-

sel's unprofessional errors, the result of the proceeding would have been different." *Garrett*, 78 F.3d at 1301 (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)).

■ Petitioner alleges that he was inadequately and incorrectly advised by counsel that cocaine base was crack, or more precisely, that merely by proving his possession of cocaine base, the Government would have also proven that he had possessed crack, subjecting him to the enhanced sentence. To illuminate the precise nature of the error, it is helpful to recall this Court's holding in *Murray*:

> The error to be guarded against occurs when at key phases of the process—a chemist's report, the plea colloquy, the comments by Court and counsel at sentencing or similar transactions—cocaine base is erroneously and specifically equated with crack. It is at this point that the intelligence of a waiver becomes suspect, for if the defendant is informed (perhaps by the sentencing judge) that cocaine base is crack, he may falsely believe that by merely by showing (or eliciting an admission) that the substance was *cocaine base*, the prosecution has satisfied its burden of showing that the substance was actually *crack*.

*Murray v. United States*, Civ. No. 3–96–1132, slip op. at 4 (D. Minn. filed Apr. 9, 1997).

Petitioner identifies several instances in the record which he alleges demonstrate this problem. One issue can be disposed of summarily: the linguistic fortuity that the indictment brought against Petitioner specified that he had possessed crack cocaine ("276 grams of a mixture and substance containing cocaine base ('crack')") did not transform the Government's burden of proof. The Eighth Circuit has clearly and repeatedly stated that sentencing factors such as whether a given amount of cocaine constitutes crack are matters for the Court to determine by a preponderance of the evidence. *U.S. v. Monroe*, 978 F.2d 433, 434 (8th Cir.1992). That crack was specifically referenced in the charge

does not impose a burden of proof beyond a reasonable doubt.

Other points are more difficult. In the plea agreement, the following language appears:

> The defendant agrees that the United States could prove at trial that there were more than 50 grams of crack cocaine originally in the package, that is, 276 grams of cocaine base. The defendant also agrees that the United States could prove, based on the analysis of a chemist, that the substance was cocaine base.

(Plea Agreement at 2–3.)

One who was generally aware that crack is but a species of cocaine base would likely read the parenthetical qualification in the indictment, i.e., "276 grams ... [of] cocaine base ('crack')" as consistent with that understanding. One would be somewhat confused, then, to read the plea agreement and learn that the two substances are the same. And yet, that is the suggestion of the plea agreement, which indicates that since the Government could prove that the substance was cocaine base, it would necessarily have proven that the substance was crack

Of course, this is not the only possible reading—one might understand the plea agreement to be a somewhat inartful expression of a correct concept. In this case, the likelihood that this correct interpretation actually occurred is undermined. In an "affidavit" which this Court will recognize under 28 U.S.C. § 1746, Petitioner states that (1) he was not advised of Amendment 487 prior to the plea agreement (2) Petitioner's trial counsel advised him by telephone in August and September 1996 that he had not been aware of Amendment 487, and agreed to attest having provided Petitioner incorrect advice, and (3) the telephone system of FCI–Pelkin, from which this discussion originated, provided for automatic taping of outgoing calls. A second declaration from Petitioner's "jailhouse lawyer" corroborates the second point.[2]

The point is also corroborated by the transcript of the plea colloquy. The Court has read it with some care, and is left with "an uneasy feeling" that all involved equated cocaine base with crack *Cf., U.S. v. Monroe,* 978 F.2d 433, 435 (8th Cir.1992) (Court of Appeals unable to determine from record which substance had been identified by expert testimony). Some examples:

> THE COURT: And you would also be admitting involvement with a certain amount of crack, or cocaine base, and there are sentencing in the federal system for particular amounts of drugs, and also worse consequences for crack than for powder cocaine. Do you understand that?

(Plea Tr. at 6–7.)

> THE COURT: Then under "Plea Agreement" it indicates that you would plead to the Count I in the indictment, charging knowingly and intentionally intent [sic] to distribute approximately 276 grams of crack.

(Tr. at 8.)

> THE COURT: And it indicates that you also agree that you understand that the United States could prove that the substance was cocaine base. Has your lawyer told you, has the Government made a test of whatever substance you had?
>
> DEFENDANT RICE: Yes.
>
> THE COURT: And do you believe that they'd be able to prove that it was, in fact, cocaine base or crack?
>
> DEFENDANT RICE: Yes.

(Tr. at 8–9.)

Later in the transcript, the Court consistently refers to the charged substance as "crack," in eliciting Petitioner's admissions as to his conduct. (Tr. at 16–19.) Yet, the confusion has already been sown. Assuming that Petitioner's counsel failed to advise Petitioner regarding Amendment 487, then by the time he admitted to possessing crack, Petitioner had also been twice advised by the sentencing Court that cocaine base is crack. Note the reference to the penalty distinction between powder cocaine and crack appearing

---

**2.** Were the Court required in this proceeding to consider whether this statement was admissible, it appears that FRE 804(b)(3) would so provide.

at page 6 of the transcript. This observation was correct, but irrelevant. The distinction to which the Amendment 487 speaks is between cocaine *base* and crack. Inasmuch as cocaine powder was never an issue in determining Petitioner's sentence, this observation was of little help.

If counsel was truly unaware of, or failed to advise Petitioner of Amendment 487, this would be a serious error, one which may have deprived Petitioner of a fair proceeding. As Petitioner correctly notes, the Government never did present any evidence that the substance possessed was crack. All we can say with certainty is that it was cocaine base. Trial counsel for Petitioner responded to Petitioner's concerns regarding the quality of his representation ambiguously. Aside from the as-yet unproven "admission" of deficiency, trial counsel stated as follows:

> With respect to the collateral attack on your sentence, please advise your lawyer and the Court that I did not consider Amendment 487 to the Sentencing Guidelines to be an issue in your case, and it was not raised prior to your plea or sentencing.

(Letter from Bryant–Wolf to Rice of 11/1/96.)

This letter does not say that counsel was aware of Amendment 487, but did not invoke it for strategic reasons, or that counsel was aware of it at all. Possibly, given the severe sentences Petitioner faced on the career offender and spurious (but at the time, real) § 924(c) charge, counsel might have rationally chosen not to contest the Government on this point. But the record does no more than suggest this possibility. In the absence of at least a more specific chemist's report, this seems an unlikely concession. In short, the Court is left with the "uneasy feeling" that neither the Government, trial counsel nor the sentencing Court appreciated the cocaine base/crack distinction articulated in Amendment 487. If this occurred, Petitioner was indeed prejudiced, because he may have

faced the 120–month mandatory minimum sentence applicable to cocaine base,[3] rather than the 151–month sentence at the low end of the prescribed range which was actually imposed. Of course, it is possible that the substance actually was crack, but again, the record is inconclusive.

CONCLUSION

In view of the above, it is appropriate to appoint counsel so that Petitioner may conduct necessary discovery. The Office of the Federal Public Defender is accordingly directed to provide such counsel. 18 U.S.C. § 3006A (b). At this time, the Court contemplates that the inquiry will focus on trial counsel's knowledge of Amendment 487, and whether the 276 grams of cocaine base remain available for testing. Within forty-five days of this Order, counsel for Petitioner shall inform the Court as to when an evidentiary hearing, if necessary, may be scheduled.

IT IS SO ORDERED.

---

3. This is likely the source of the problem. 21 U.S.C. § 841 imposes penalties, including mandatory minimum sentences for "cocaine base" without specifying crack. The guidelines also are keyed to "cocaine base." Since indictments typically track the operative statute, prosecutors use the term "cocaine base" even in situations where it is understood that "crack" is the subject of the action. There is no concern here that Petitioner was unaware that he was pleading to

conduct carrying an enhanced penalty. The problem is the slight mismatch between what the statute and guidelines generally say, and what Amendment 487 teaches the guidelines actually mean. This requires all of the actors present at the plea colloquy to state consistently and with precision what is meant by "cocaine base." Whatever the ultimate merit of Petitioner's challenge, this plainly did not happen.